UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| **Teri Lynn Hinkle**<br>**Plaintiff**<br><br>vs<br><br>**MIDLAND CREDIT**<br>**MANAGEMENT INC.**<br>**MIDLAND FUNDING LLC.**<br>**ENCORE CAPITAL GROUP INC.**<br>**Defendants** | Case No **CV313 033**<br><br>Judge _____<br><br>**Trial by Jury Demanded** |

## ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FDCPA AND THE FCRA

### JURISDICTION AND VENUE

1. This court has jurisdiction under 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d), 28 U.S.C § 1331 and 28 U.S.C. § 1337.

2. All conditions precedent to the bringing of this action have been performed.

3. This action arises out of violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq (FCRA) by Defendants, Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group Inc. In addition there are violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. (FDCPA) by all Defendants via multiple invasions of Plaintiff, Teri Lynn Hinkle's personal privacy by Defendants in their illegal efforts to collect non-existent alleged consumer debts purported to be owed by Hinkle, hereafter "alleged accounts" as set forth below. Hinkle seeks statutory, actual and punitive damages, costs and anyattorney's fees.

4. The occurrences which give rise to this action occurred in Dodge County, Georgia and Hinkle resides in Dodge County, Georgia.

5. Venue is proper in the Southern District of Georgia, Dublin Division.

## PARTIES

6. The Plaintiff in this lawsuit is Teri Lynn Hinkle, (Hinkle), an adult natural person, who resides in Dodge County, Georgia and is a consumer as defined by 15 U.S.C. § 1681a(c), and 15 U.S.C. § 1692a(3).

7. Defendant Encore Capital Group, Inc. ("Encore") is a "debt collector" as defined by 15 U.S.C. § 1681a(6), and a for profit corporation organized in Delaware, which has its principle place of business located in San Diego, CA, lists its San Diego Operations address as 8875 Aero Drive, Suite 200, San Diego, CA 92123 and maintains Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, as its registered agent for service of process. Encore uses instrumentality of interstate commerce or the mails in a business the principle purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

8. Defendant Midland Funding, LLC, ("Midland") is a "debt collector" as defined by 15 U.S.C. § 1692a(6), a "furnisher of information" as defined by 15 U.S.C. § 1681s-2, a "user of information" as defined by 15 U.S.C. § 1681m, and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Encore, and maintains Corporation Service Company, 40 Technology Parkway South, Suite #300, Norcross, Georgia 30092 in Gwinnet County as its registered agent for service of process. Midland uses instrumentality of interstate commerce or the mails in a business the principle purpose of which is the collection of any debts, and/or regularly

collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

9. Defendant, Midland Credit Management Inc. ("MCM"), is a "debt collector" as defined by 15 U.S.C. § 1692a(6), a "furnisher of information" as defined by 15 U.S.C. § 1681s-2, a "user of information" as defined by 15 U.S.C. § 1681m, and a for-profit corporation organized in Kansas that is a wholly owned subsidiary of Encore, has its principle place of business located in San Diego, CA and maintains Corporation Service Company, 40 Technology Parkway, South, Suite #300, Norcross, Georgia 30092 in Gwinnet County as its registered agent for service of process. MCM uses instrumentality of interstate commerce or the mails in a business the principle purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

10. MCM, Midlandand Encore are in fact, separate entities;as such MCM, Midland and Encore have all been named as Defendants in this Complaint.

11. According to the California Secretary of State website, MCM, Midland and Encore, operate out of the same address which is listed as: 8875 Aero Drive, Suite 200, San Diego, CA 92123.

## GENERAL ALLEGATIONS

12. Hinkle obtained her consumer credit reports from the three major credit reporting agenciesin May of 2011 and found entries by entities that she was unfamiliar with in the reports.

13. Hinkle found after examination of her consumer credit reports that Defendant,MCM hadbeen reporting false and erroneous information to all three credit reporting agencies.Hinkle had never had **any** business relationship of **any** kind with MCM and had never been contacted by them.

14. MCM was reporting an alleged account on all three consumer credit reports, which did not belong to Hinkle.

15. On September 6, 2011 Hinkle filed a dispute of the validity of the entries made by MCM with all three credit reporting agencies, Equifax, Experian and TransUnion.

16. As a result of the dispute Equifax reported the information was deleted, Experian reported the information reported was updated and would remain. TransUnion reported the information was verified and would remain.

17. On October 20, 2011 Hinkle sent a **"Demand for Validation of Debt"** letter by USPS Certified mail to MCM regarding the alleged account it was reporting.Even though MCM knew, or should have known, that the "alleged account" was non-existent MCM failed to direct the consumer reporting agencies, Experian and TransUnion, to delete the inaccurate information about Hinkle from her files.

18. On December 21, 2011 having ignored Hinkle's requested validation, MCMmailed a dunning letter to Hinkle claiming to have **"purchased"** an alleged **"debt"** and further claiming to be the servicer of the alleged account and demanded payment.

19. On December 27, 2011 MCM began calling Hinkle using an automated dialing system while blocking the Caller ID. Hinkle answered the calls and when eventually a live voice stated it was MCM on the line, informed the *"Collectors"* each time that MCM had no business with her, no permission to call her and that they were violating consumer protection laws by doing so. The calls continued until April of 2012.

20. On February 5, 2012 MCM sent a second dunning letterto Hinkle, this timeacknowledging Hinkle's dispute but demanding Hinkle prove to them the alleged debthad been paid in full, was a fraud or

that Hinkle was in fact **dead**. MCM made no attempt whatsoever to comply with Hinkle's timely Demand for Validation of Debt, andended the letter with payment instructions.

21. On April 5, 2012 MCM sent a third dunning letteroffering further discounts if Hinkle would pay by May 5, 2012. MCM made no attempt whatsoever to comply withHinkle's timely demand for validation but instead continued collection actions.

22. On May 7, 2012 MCM obtained Hinkle's TransUnion consumer credit report withouta permissible purpose still ignoring Hinkle's timelyDemand for Validation sent to them in October of 2011.

23. On June 15, 2012 MCM sent yet another dunning letter to Hinkle repeating the same offer of discount as was made in the April 5, 2012 letter to Hinkle. Still Defendantdid not comply with Hinkle's timely Demand for Validation.

24. In June of 2012 Hinkle again obtained her consumer credit reports from all three credit reporting agencies whereby she discovered that MCM was still reporting false and erroneous information on all three reportsand had added a second non-existent alleged account whichDefendant, Midland was also reporting on all three credit reports. On the Equifax report MCM states the alleged account originated in 2002. Hinkle had no accounts with *any* entities in 2002 that could have been acquired by *any* debt collector.

25. On July 13, 2012 Hinkle disputed the entries placed on her credit reports by MCM and Midland withall three reporting agencies. As a result MCM, removed one alleged account from TransUnion but all the other entries on all three reportsplaced by both MCM and Midland were updated and remained.

26. On July 21, 2012 MCM sent Hinkle another "dunning letter" identical to the previous letter of February 5, 2012 in response to Hinkle's dispute and still made no attempt to validate the alleged debt.

27. On July 27, 2012 Hinkle sent a "**Notice of Intent to Sue**" letter to MCM and Midland via USPSCertified mail.Defendants have not responded to date.

28. On July 27, 2012 Hinkle sent a second Demand for Validation letter to MCM and Midland via USPS Certified mail. Defendants have not complied or responded in any way to Hinkle's demand.

29. On July 27, 2012 MCM sent Hinkle another dunning letter identical to the ones sentApril 5, 2012 and June 15, 2012. There still had been no compliance with Hinkle's timely Demands for Validation.

30. MCM and Midland have continued to report false and erroneous information on Hinkle's consumer Credit reports after formal dispute for a period of 17 months collectively with multiple entries between three reporting agencies which they know to be incorrect.

31. Defendants have alleged that Hinkle incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and that Hinkle is obligated to pay them.

32. Encore, at least "indirectly" engaged in the attempted collection of an alleged consumer debt after it had been disputed and without providing the validation timely demanded by Plaintiff. Encore is a debt buyer that owns Midland Funding LLC and Midland Credit Management who both sent dunning letters to Plaintiff after her demand for validation, reported erroneous information to all three Credit Reporting Agencies and obtained Plaintiff's credit report without providing it. MCM, and Midland operate as a debt buying and collection enterprise. Encore is not simply a parent holding company, though it owns one hundred percent of the shares and interests in MCM and Midland. All three Defendants operate as parts of a single business operation yet routinely violate federal consumer protection statutes separately. Encore provides management and decision-making,

Midland exists as an employee-less paper entity that holds title to the enterprise's purchased debt portfolios and MCM operates as the front for contact with the targeted debtor-consumers, calling itself the "servicer" of the Defendant's alleged accounts.

33. On its webpage, Encore explains that, "Encore Capitol Group, Inc. (Encore), through its subsidiaries (collectively, the *Company*), is a leading provider of debt management and recovery solutions for consumers and property owners across a broad range of assets. We purchase portfolios of defaulted consumer receivables at **deep discounts** to face value and use a variety of operational channels to maximize our collections from these portfolios. We manage our receivables by partnering with individuals as they repay their obligations and work toward financial recovery." [1]

34. By their own admission, the Defendants purchase information on accounts for far less than the amounts owed however they misrepresent the amount they have at risk by attempting to collect from consumers who are led to believe they are satisfying a debt they *may or may not* have owed to an original creditor when in reality any original creditor will not be paid a single penny. By law the original creditor still has the right to collect as well even if the consumer is **duped** into paying the information buyer.

35. Encore does not operate independent of MCM and Midland. It does not have separate management or separate business and income. Instead, it serves as the name of the Encore family of subsidiaries, all of whom are interrelated and inseparably operated as a single business operation that is engaged in the business of purchasing *consumer debt information* and attempting to collect after paying pennies on the dollar for said information. Each of these entities however commits violations against consumers individually as if they were in fact separate entities.

36. When purchasing portfolios of debt information, the Defendants make an intentional business decision not to obtain competent evidence as to whether written contracts exist between the original

---

[1] See http://www.encorecapital.com last visited December 18, 2012

creditors of the debts and the consumers, or if there was other documentation showing when or how the debts were incurred. There islittle to no documentation beyond very rudimentary information which would allow them to calculate the amount of debt owed by a consumer ie; name, last known address, telephone number, social security number, amount alleged to be due, name of original creditor, original account number and current owner of the debt.

37. It would appear that Defendant, Encore wasted no time in violating their recent commitment to the Federal Trade Commission to correct their dishonest, illegal and egregious business practices in regard to the Consumer Protection statutes Congress saw fit to put in place.

38. Defendants are "inextricably intertwined" and/or connected in the actions alleged in this action.

39. Defendants are each the alter ego of the other.

40. The corporate fiction should be disregarded as it is being used as a means of perpetrating fraud and/or abuse of the corporate structure while routinely violating federal consumer protection statutes.

41. Each Defendant actively participated in the acts or omissions which are the subject of this suit and sought to benefit from the actions alleged in this complaint.

42. MCM's letter in December of 2011, three months after Hinkle disputed the alleged debt and demanded validation, contains what Hinkle perceives to be an implied threat to continue damaging Hinkle's credit worthiness in an attempt to coerce her into paying them money not owed:

    a. "*You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligations."

43. Defendants have never provided any signed verification, validation or accounting of any alleged accounts or copy of any signed contract or agreement. Defendants have been knowingly reporting inaccurate information about Hinkle to the three major credit reporting agencies, TransUnion,

Equifax and Experian, damaging Hinkle since at least September of 2011 in an attempt to coerce and deceive herinto paying amounts not owed to them or by Hinkle.

  a. TransUnion, Equifax and Experian are consumer reporting agencies as defined by the FCRA, 15 U.S.C. § 1681a(f).

44. Defendant's dissemination of inaccurate information has and is causing the following damages:

  a. Personal expenses related to disputing the allegedly inaccurate information

  b. Injury to her credit reputation, undue worry and loss of happiness resulting from the distribution of incorrect and disparaging information to parties both known and unknown.

  c. A diminished credit score which may hinder Plaintiff's ability to obtain credit in the future.

45. There is no debt as to the basis of this instant action, rather the basis is the illegal, unconscionable and invasive behavior of all three Defendants in their attempts to collect non-existent alleged debt from Hinkle. Hinkle has attempted on multiple occasions to provide Defendants the opportunity to cure said egregious behavior to no avail.

46. Upon completion of discovery Hinkle intends to seek certification of her complaint as a **class action** due to the continued egregious behavior demonstrated by the defendants which continues even after the massive number of law suits filed against them for similar and/or identical activities.

## COUNT I

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT, MIDLAND CREDIT MANAGEMENT, INC.

47. Paragraphs 1 through 46 are re-alleged as though fully set forth herein.

48. Discovery of violations brought forth herein occurred from May of 2011 to present andare within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

49. Hinkle is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

50. TransUnion, Equifax and Experian are credit reporting agencies within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

51. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

52. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person mayobtain a consumer credit report.

53. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of Insurance involving the consumer, or is offered a bona fide offer of credit as a result of theInquiry.

54. Hinkle has never had any business dealings or any accounts with, made application for Credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant, MCM.

55. On May 7 of 2012MCM obtained the TransUnion consumer credit report for Hinkle with no permissible purpose in violation of the FCRA, 15 U.S.C. § 1681b. Hinkle had no account whereby MCM could claim permissible purpose and said actions were a clear violation of her privacy. No claim of permissible purpose connected to the collection of a debt could exist because MCM was fully aware the "**alleged accounts**" they were claiming to "**own**" and "**service**" were in dispute and they had not "**validated**" them as perHinkle's timely demand.

56. At no time did Hinkle give her consent for MCM to acquire her consumer credit report from any credit reporting agency.

57. The actions of MCM obtaining the consumer credit report of Hinkle with no permissible purpose or her express consent was a willful violation of FCRA, 15 U.S.C. § 1681b committed with actual malice and an egregious violation of Hinkle's right to privacy.

58. From September of 2011 to present MCM has been willfully reporting information purported to be in connection with Hinkle which it knew was false and inaccurate to all three credit reporting agencies, Equifax, Experian and TransUnion in clear violation of the FCRA 15 U.S.C. § 1681s-2(b).

59. To date MCM has committed thirty five separate violations of 15 U.S.C. § 1681s-2(b) to the best of Hinkle's knowledge. Further violations may be identified in the discovery process.

60. Hinkle, by filing disputes with the consumer reporting agencies in September of 2011 and again in July of 2012, invoked her private right of action to assert claims against MCM arising under 15 U.S.C. § 1681s-2(b).

61. At no time has MCM ever provided any valid justification they may have had for obtainingHinkle's credit report or reporting false information to the credit reporting agencies. MCM had a duty to properly ascertain if there was any **legitimate** permissible purpose before obtaining Hinkle's credit report and MCM breached said duty. There was no account that MCM had any right to collect to have had permissible purpose to obtain Hinkle's credit report and therefore Hinkle is entitled to damages for breach of said duty.

62. Hinkle made multiple attempts to dispute and provided ample opportunity for MCM to engage in mitigation of damages and reach a settlement for their violations before taking civil action against them. Hinkle was not able to settle this matter with MCM prior to litigationhowever that was not for lack of trying.

WHEREFORE, Plaintiff demands judgment for damages against Defendant, MIDLAND CREDIT MANAGEMENT for statutory damages for each violation, actual damages, punitive damages to be decided at trial and any attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT II

**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT MIDLAND FUNDING LLC.**

63. Paragraphs 1 through 62 are re-alleged as though fully set forth herein

64. Since July of 2012 Defendant, Midland has continuously reported information which it knew to be false and inaccurate to all three credit reporting agencies, Equifax, Experian and TransUnion in blatant violation of the FCRA 15 U.S.C. § 1681s-2(b).

65. To date Midland has committed 13 separate violations of 15 U.S.C. § 1681s-2(b) to the best of Hinkle's knowledge. Further violations may be identified during the discovery process.

66. Hinkle, by filing a dispute with the consumer reporting agencies in July of 2012, invoked her private right of action to assert claims against Midlandarising under 15 U.S.C. § 1681s-2(b).

67. At no time has Midland ever provided any valid justification they may have had for reporting false information to the credit reporting agencies even though Hinkle made a timely demand that they do so. Midland had a duty to properly ascertain if there was any **legitimate**account belonging to Hinkle before reporting such information to the credit reporting agencies. Midland breached said duty. There was no account that Midland had any right to collect to have had lawful standing and authority to report onHinkle's credit reports and therefore Hinkle is entitled to damages for breach of said duty.

68. Hinkle made multiple attempts to dispute and provided ample opportunity for Midland to engage in mitigation of damages and reach a settlement for their violations before taking civil action against them. Hinkle was not able to settle this matter with Midland prior to litigationhowever it was not for lack of trying.

WHEREFORE, Hinkle demands judgment for damages against Defendant, MIDLAND FUNDING LLC. for statutory for each violation, actual damages, punitive damages to be decided at trial and any attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT III

### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681, WILLFUL NON-COMPLIANCE BY DEFENDANT ENCORE CAPITAL GROUP INC.

69. Paragraphs 1 through 68 are re-alleged as though fully set forth herein.

70. By its own admission on its web site Defendant, Encore provides management and decision-making for Defendants Midland and MCM.

71. Encore is therefore, in violation of the FCRA 15 U.S.C. § 1681b by and in direct consequence to, its decision to have MCM obtain Hinkle's credit report without permissible purpose in May of 2012.

72. Encore is also directly and equally responsible with MCM and MIDLAND for the cumulative forty eight separate violations of 15 U.S.C. § 1681s-2(b).

WHEREFORE, Hinkle demands judgment for damages against Defendant, ENCORE CAPITAL GROUP INC. for statutory damages for each violation, actual damages, punitive damages to be decided at trial and any attorney's fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT IV

### VIOLATIONS OF THE FAIR DEBT COLLECTION PARACTICES ACT (FDCPA), 15 U.S.C. §1692 BY DEFENDANTS MIDLAND CREDIT MANAGEMENT, MIDLAND FUNDING LLC. AND ENCORE CAPITAL GROUP INC.

73. Paragraphs 1 through 72 are re-alleged as though fully set forth herein.

74. Defendants, MCM and Midland by reporting an "alleged" debt as a "debt collector" to a consumer reporting agency generated a "communication" in connection with the collection of a debt which they knew was incorrectand a violation of the FDCPA 15 U.S.C. § 1692e(8).

75. Defendants, MCM and Midland failed after initiating first communication in connection with the collection of a debt to provide the required "Thirty Day Validation Notice" or disclosures to Plaintiff which constitutes a violation of the FDCPA 15 U.S.C. § 1692g(a)(1),2),(3),(4),(5).

76. Defendants, MCM and Midland made a false representation to the three Consumer Reporting Agencies, Equifax, Experian and TransUnion on multiple occasions as to the character, amount or legal status of an alleged debt which results in a violation of the FDCPA, 15 U.S.C. § 1692e(2).

77. The FDCPA requires that a "debt collector" cease collection efforts until debt is validated if a consumer has demanded such in a timely manner. Defendants, MCM and Midland blatantly ignored Hinkle's timely demand for validation and are still engaging in collection actions, resulting in multiple violations of 15 U.S.C. 1692g(b).

78. Defendant, MCM after refusing to respond to Hinkle's demand for validation harassed her with auto-dialed collection calls repeatedly in violation of FDCPA, 15 U.S.C. § 1692d and d(5). Hinkle intends to amend this cause of action to include the specific callers after discovery.

79. By its own admission on its web site, Encore provides management and decision-making for Defendants Midland and MCM.

80. Encore is therefore, complicit in each of the above FDCPA violations by and in direct consequence to its decisions to allow MCM and Midlandto commit said violations and in its continuing decision to refuse to cease and desist until providing Hinkle with timely demanded validation.

81. None of the three Defendants have produced any evidence or factual documentation of any "alleged debt" Hinkle could be responsible for and havecontinued to violate the consumer protection statutes.

82. Hinkle has never had any business relationship with any of the three Defendants.

83. Hinkle has no "alleged accounts" which any of the three Defendants could claim ownership of.

84. Defendants have produced no evidence or factual documentation of any "alleged debt" Hinkle could be responsible for but have violated Hinkle's rights with impunity for nearly two years and possibly longer.

85. A purchase of Hinkle's personal information does not constitute a contractual obligation between Hinkle and any of the three Defendants.

86. **THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.[2]**

WHEREFORE, Hinkle demands judgment for damages against each Defendant, MIDLAND CREDIT MANAGEMENT INC., MIDLAND FUNDING LLC., and ENCORE CAPITAL GROUP INC. for statutory damages actual damages, and any attorney's fees and costs pursuant to 15 U.S.C. § 1692 et seq.

## DEMAND FOR TRIAL BY JURY

---

[2] The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C § 1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices.

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: *April 25, 2013*

Respectfully Submitted,

*Teri K. Hinkle*

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023
478-374-4132
queensongbird@gmail.com

Service to:
Midland Credit Management Inc.
8875 Aero Drive, Suite #200
San Diego, California 92123
Registered Agent: Corporation Service Company
40 Technology Parkway South, Suite #300
Norcross, Georgia 30092

Midland Funding LLC.
8875 Aero Drive, Suite #200
San Diego, California 92123
Registered Agent: Corporation Service Company
40 Technology Parkway South, Suite #300
Norcross, Georgia 30092

Encore Capital Group Inc.
8875 Aero Drive, Suite #200
San Diego, California 92123
Registered Agent: Corporation Service Company
2711 Centerville Road, Suite #400
Wilmington, DE 19808

