# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 MAY 30   AM 8: 39

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| TERI LYNN HINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 313-033 |
| | ) | |
| MIDLAND CREDIT MANAGEMENT | ) | |
| INC.; MIDLAND FUNDING LLC; and | ) | |
| ENCORE CAPITAL GROUP INC., | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

The above-captioned case is presently before the Court on Plaintiff's motion to proceed *in forma pauperis* ("IFP"). (Doc. no. 2.) Having considered the motion, Plaintiff's request for leave to proceed IFP is **GRANTED**. However, if in the future, it appears that Plaintiff's financial situation has improved, the Court may act on its own initiative to require her to pay either the entire filing fee or an appropriately determined partial filing fee.

## I.    SCREENING OF THE COMPLAINT

Plaintiff filed the above-captioned case *pro se* on April 30, 2013, attempting to assert claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1] As Plaintiff's

---

[1]Notably, the instant complaint constitutes Plaintiff's latest entry in a series of materially similar complaints against various Defendants, the most recent of which was closed on May 20, 2013.  See Hinkle v. ARS Nat'l Serv., Inc., CV 312-052 (S.D. Ga. May 20, 2013).  In that case, the Honorable Dudley H. Bowen, Jr., United States District Judge, ruled in favor of the defendant at the summary judgment stage, noting additionally that

complaint was filed IFP, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

In her complaint, Plaintiff names the following Defendants: (1) Midland Credit Managment, Inc. ("Defendant MCM"); (2) Midland Funding LLC ("Defendant Midland"); and (3) Encore Capital Group, Inc. ("Defendant Encore"). (Doc. no. 1, p. 1.) Plaintiff identifies all three Defendants as debt collection agencies, and states that Defendants MCM and Midland are wholly owned subsidiaries of Defendant Encore. (Id. at 1-2.) Plaintiff first alleges that, after obtaining her consumer credit reports from the three major credit reporting agencies – Equifax, Experian, and TransUnion – in May of 2011, she discovered that Defendant MCM had been reporting false information concerning her "alleged account" to those agencies. (Id. at 3.) Plaintiff asserts that she has never had any business relationship or communication of any kind with Defendant MCM. (Id.) Plaintiff alleges that, on September 6, 2011, she filed a dispute as to the validity of Defendant MCM's "entries" with the three credit reporting agencies, but that, subsequently, only one of those agencies deleted the allegedly false information. (Id. at 4.)

Plaintiff next alleges that, on October 20, 2011, and then later on July 27, 2012, she sent "Demand for Validation of Debt" letters to Defendant MCM concerning the alleged

---

Plaintiff's complaint was filed in bad faith. Id., doc. no. 45, p. 18. Accordingly, on May 20, 2013, judgment was entered against Plaintiff in the amount of $5,518.50. Id., doc. nos. 45, 46. On May 28, 2013, Plaintiff filed notice of appeal. Id., doc. no. 47.

account, which she contends does not exist, and that Defendant MCM knew or should have known that the account did not exist but failed to direct the credit reporting agencies to remove the inaccurate information. (Id. at 4-6.) Plaintiff alleges that Defendant MCM, from December 21, 2011, through July 27, 2012, despite her first demand for validation, mailed her a series of "dunning letters" demanding payment of a debt connected to her account, and additionally repeatedly called her using an automated dialing system from December 27, 2011, through April of 2012. (Id. at 4-5.) Plaintiff additionally asserts that Defendant MCM obtained her "TransUnion consumer credit report without a permissible purpose" on May 7, 2012, noting in particular that she "had no account whereby [Defendant MCM] could claim permissible purpose." (Id. at 5, 10.)

Plaintiff alleges that she again obtained her consumer credit reports in June of 2012 and discovered that Defendant MCM was continuing to report false and erroneous information, that it had added a second non-existent account, and that Defendant Midland was also reporting the same false information. (Id. at 5.) Plaintiff contends that, although Defendant MCM states on the Equifax report that the newly added account originated in 2002, she had "no accounts with *any* entities in 2002 that could have been acquired by *any* debt collector." (Id.) Plaintiff alleges that, on July 13, 2012, she disputed the entries placed on her credit reports by Defendants MCM and Midland, and that Defendant MCM accordingly removed one of her supposed accounts from the TransUnion report, but that the other entries on the other reports remained unchanged. (Id.) Plaintiff asserts that Defendants MCM and Midland have "continued to report false and erroneous information on [her] consumer Credit reports after formal dispute for a period of 17 months collectively." (Id. at

6.)

Plaintiff alleges that Defendant Encore "indirectly" engaged in the attempted collection of her disputed debts as well as each of the other asserted violations due to its status as the parent company of Defendants MCM and Midland and its provision of management and decision-making as to those subsidiaries. (Id. at 6-7.) Plaintiff asserts that Defendant Midland "exists as an employee-less paper entity that holds title to the enterprise's purchased debt portfolios" and that Defendant MCM "operates as the front for contact with the targeted debtor-consumers." (Id. at 7.) Plaintiff asserts that the three Defendants are "interrelated and inseparably operated as a single business operation," that Defendant Encore "serves as the name of the Encore family of subsidiaries," and that the three Defendants are "inextricably intertwined" such that they are each the alter ego of the other. (Id. at 7-8.)

Plaintiff asserts that Defendants' actions have resulted in personal expenditures related to disputing the reported information, injury to her credit reputation, "undue worry and loss of happiness," and a diminished credit score. (Id. at 9.) As to each cause of action, Plaintiff requests statutory damages, actual damages, punitive damages, and attorney's fees and costs. (Id. at 11.) Plaintiff also notes that, upon completion of discovery, she intends to seek class certification as to her claims.[2] (Id. at 9.)

*Liberally* construing Plaintiff's complaint, the Court finds that Plaintiff has *arguably*

---

[2] The Court notes that, whatever Plaintiff's stated intentions concerning class certification, such certification remains subject to the provisions of Loc. R. 23, which establishes, among other things, that the complaint in a lawsuit sought to be maintained as a class action must include next to its caption the legend, "Complaint-Class Action," and in its body, a separate heading styled "Class Action Allegations." The Local Rules may be found on the Court's website at www.gasd.uscourts.gov.

stated a viable FCRA claim against Defendants MCM and Encore based on her assertions that Defendant MCM improperly accessed her consumer report in connection to a credit account that does not exist.[3] See 15 U.S.C. § 1681b(f); Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1995) ("Under [the FCRA,] civil liability for improper use and dissemination of credit information may be imposed only on a consumer reporting agency or user of reported information who willfully or negligently violates the FCRA." (citing 15 U.S.C. §§ 1681n and 1681o)); Milton v. LTD Fin. Servs., No. CV 210-119, 2011 WL 291363 (S.D. Ga. Jan. 25, 2011) ("The FCRA imposes civil liability on . . . users of information that obtain credit reports of consumers for purposes not specified in § 1681b.").

In addition, Plaintiff has arguably stated FDCPA claims against all three Defendants based on her allegations that those Defendants communicated information known to be false and made false representations as to the character, amount, or legal status of Plaintiff's alleged debts to the three consumer reporting agencies, see 15 U.S.C. §§ 1692e(2), (8); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189-90 (11th Cir. 2010) (acknowledging a private cause of action for violations of § 1692e), and additionally failed to cease collection efforts following Plaintiff's demands for validation, see 15 U.S.C. § 1692g(b); Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1013 (11th Cir. 2004). Next, Plaintiff has arguably stated an FDCPA claim against Defendants Midland and Encore based on her allegation that Defendant Midland failed to provide a "thirty-day validation notice"

---

[3]Although Defendant Encore's role in the violations that Plaintiff alleges is unclear – in that Plaintiff does not allege that Defendant Encore is directly responsible for any such violations – the Court will allow each claim going forward against an allegedly directly responsible Defendant to proceed against Defendant Encore as well, with the expectation that Defendants will clarify the nature of parties' inter-relatedness or lack thereof.

or other disclosures following her initial communication with that Defendant. See 15 U.S.C. § 1692g(a); Vega v. McKay, 351 F.3d 1334, 1335-36 (11th Cir. 2003). Finally, Plaintiff has arguably stated an FDCPA claim against Defendants MCM and Encore based on her allegation that Defendant MCM repeatedly called her using an auto-dialing system. See 15 U.S.C. § 1692d; Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985). Accordingly, process shall issue as to all three Defendants.[4]

## II.  INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on Defendants. The United States Marshal shall mail a copy of the complaint (doc. no. 1) and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). If a defendant returns the waiver in a timely fashion, he does not have to answer the complaint until sixty (60) days after the date the Marshal mailed the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within 120 days of the date of this Order, and the failure to do so may result in dismissal of individual defendants or of the entire lawsuit. Fed. R. Civ. P. 4(m). Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate the defendants to

---

[4]In a simultaneously issued Report and Recommendation, the Court has recommended that Plaintiff's attempted FCRA claim for the reporting of false information, as well as her attempted FDCPA claim against Defendant MCM for failure to provide a thirty-day validation notice or other disclosures, be dismissed.

effect service.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendants, or upon their attorney or attorneys if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.   Except for the complaint, when submitting pleadings to the Clerk of Court, parties shall provide an original and one copy. Loc. R. 5.2.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendants or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants.  Upon being given at least five (5) days notice of the scheduled deposition date, Plaintiff shall appear and permit her deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.  The defendants shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address.  Failure to do so will result in dismissal of this

case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four (4) months after the filing of the last answer of the defendants named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five (25) questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing, when a party needs such materials in connection with a motion or response, and then only to the extent necessary, and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, she should first contact the attorney for the defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, she should also file a statement certifying that she has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents ($.50) per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve her response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion.

A response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should a defendant file a motion for summary judgment, Plaintiff is advised that she will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if she desires to contest a defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in a defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 30th day of May, 2013, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE