ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL -9 A 8:24
CLERK _____
SO. DIST. OF GA.

| | |
|---|---|
| TERI LYNN HINKLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-033 |
| ) | |
| MIDLAND CREDIT MANAGEMENT ) | |
| INC.; MIDLAND FUNDING LLC; and ) | |
| ENCORE CAPITAL GROUP INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff filed the above-captioned case *pro se* on April 30, 2013, attempting to assert claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1] Because she is proceeding *in forma pauperis*, the Court screened her original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). In a prior R&R, the Court recommended the dismissal of Plaintiff's claims under 15 U.S.C. § 1681s-2 and under 15 U.S.C. § 1692g. (See generally

---

[1] As the Court noted in its May 30, 2013 Report and Recommendation ("R&R"), the instant lawsuit constitutes Plaintiff's latest entry in a series of materially similar lawsuits against various Defendants, the most recent of which was closed on May 20, 2013. See Hinkle v. ARS Nat'l Serv., Inc., CV 312-052 (S.D. Ga. May 20, 2013). In that case, the Honorable Dudley H. Bowen, Jr., United States District Judge, ruled in favor of the defendant at the summary judgment stage, noting additionally that Plaintiff's complaint was filed in bad faith. Id., doc. no. 45, p. 18. Accordingly, on May 20, 2013, judgment was entered against Plaintiff in the amount of $5,518.50. Id., doc. nos. 45, 46. On May 28, 2013, Plaintiff filed a notice of appeal, and that case remains pending before the Eleventh Circuit. Id., doc. no. 47.

doc. no. 4.) On June 13, 2013, Plaintiff filed objections to the R&R in conjunction with a motion to amend her complaint, explaining that she "realize[ed] she failed to properly state her claims under 15 U.S.C. § 1681s-2(b)" and requesting leave to file an amended complaint that might correct the insufficient pleading. (Doc. no. 6, p. 4.) The Court granted Plaintiff's motion. (Doc. no. 7.)

Plaintiff has now filed her amended complaint, which supersedes the original complaint in its entirety. See Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*); Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). Because Plaintiff's original complaint has been superseded, the Court's prior R&R screening the original complaint is **VACATED**. (Doc. no. 4.) Therefore, the Court will proceed to screen Plaintiff's amended complaint in accordance with the IFP statute. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

I.     **SCREENING OF THE COMPLAINT**

    A.     **Complaint Allegations**

In her amended complaint, Plaintiff names the same Defendants as in her original complaint: (1) Midland Credit Managment, Inc. ("Defendant MCM"); (2) Midland Funding LLC ("Defendant Midland"); and (3) Encore Capital Group, Inc. ("Defendant Encore"). (Doc. no. 8, p. 1.) Plaintiff identifies all three Defendants as debt collection agencies, and states that Defendants MCM and Midland are wholly owned subsidiaries of Defendant

Encore. (Id. at 1-3.)

Taking the facts alleged in the amended complaint as true, as the Court must for the present screening, the facts are as follows. After obtaining her consumer credit reports from the three major credit reporting agencies – Equifax, Experian, and TransUnion – in May of 2011, Plaintiff discovered that Defendant MCM had been reporting false information concerning her "alleged account" to those agencies. (Id. at 4.) Having never had any business relationship or communication of any kind with Defendant MCM, Plaintiff alleges that she filed a dispute as to the validity of Defendant MCM's "entries" with the three credit reporting agencies on September 6, 2011, but only Equifax deleted the allegedly false information. (Id. at 4.)

On October 20, 2011, and then later on July 27, 2012, Plaintiff sent "Demand for Validation of Debt" letters to Defendant MCM concerning the alleged account, which Defendant MCM knew or should have known did not exist. (Id. at 4-7.) Defendant MCM failed to direct the credit reporting agencies to remove the inaccurate information. (Id.) From December 21, 2011, through July 27, 2012, despite Plaintiff's first demand for validation, Defendant MCM mailed her a series of "dunning letters" demanding payment of a debt connected to her non-existent account. (Id.) Defendant MCM also repeatedly called her using an automated dialing system beginning on December 27, 2011, a practice that continues even now. (Id.) Plaintiff informed Defendant MCM on several occasions that the phone calls were a violation of consumer protection laws and demanded that the calls cease. (Id. at 22-23.) In addition, Defendant MCM obtained Plaintiff's TransUnion consumer credit report on May 7, 2012, despite the fact that she "had no account whereby [Defendant MCM]

could claim permissible purpose." (Id. at 6, 15.)

Plaintiff again obtained her consumer credit reports in June of 2012 and discovered that Defendant MCM was continuing to report false and erroneous information, that it had added a second non-existent account, and that Defendant Midland was also reporting the same false information. (Id. at 6.) Although Defendant MCM states on the Equifax report that the newly added account originated in 2002, Plaintiff had "no accounts with *any* entities in 2002 that could have been acquired by *any* debt collector." (Id.) On July 13, 2012, Plaintiff disputed the entries placed on her credit reports by Defendants MCM and Midland, and Defendant MCM accordingly removed one of her supposed accounts from the TransUnion report, but the other entries on the other reports remained unchanged. (Id.) Defendants MCM and Midland have thus "continued to report false and erroneous information on [her] consumer Credit reports after formal dispute for a period of 18 months collectively." (Id. at 7.) Had Defendants MCM and Midland "performed the reasonable reinvestigation required by law" when Plaintiff disputed her alleged accounts, they would have been aware that the information they were furnishing was incorrect and should have been removed. (Id. at 7, 10-12.)

Defendant Encore "indirectly" engaged in the attempted collection of Plaintiff's disputed debts, as well as each of the other asserted violations, due to its status as the parent company of Defendants MCM and Midland and its provision of management and decision-making as to those subsidiaries. (Id. at 7-8.) Defendant Midland "exists as an employee-less paper entity that holds title to the enterprise's purchased debt portfolios" and Defendant MCM "operates as the front for contact with the targeted debtor-consumers." (Id. at 8.) The

4

three Defendants are "interrelated and inseparably operated as a single business operation," Defendant Encore "serves as the name of the Encore family of subsidiaries," and the three Defendants are "inextricably intertwined" such that they are each the alter ego of the other. (Id. at 9.)

Plaintiff asserts that Defendants' actions have resulted in personal expenditures related to disputing the reported information, injury to her credit reputation, "undue worry and loss of happiness," and a diminished credit score. (Id. at 13.) As to each cause of action, Plaintiff requests statutory damages, actual damages, punitive damages, and attorney's fees and costs. (Id. at 16.)

### B. Screening

*Liberally* construing Plaintiff's complaint, the Court finds that Plaintiff has *arguably* stated a viable FCRA claim against Defendant MCM based on her assertions that it improperly accessed her consumer report in connection with a credit account that does not exist. See 15 U.S.C. § 1681b(f); Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1995) ("Under [the FCRA,] civil liability for improper use and dissemination of credit information may be imposed only on a consumer reporting agency or user of reported information who willfully or negligently violates the FCRA." (citing 15 U.S.C. §§ 1681n and 1681o)); Milton v. LTD Fin. Servs., No. CV 210-119, 2011 WL 291363 (S.D. Ga. Jan. 25, 2011) ("The FCRA imposes civil liability on . . . users of information that obtain credit reports of consumers for purposes not specified in § 1681b.").

Plaintiff has also arguably stated an FCRA claim against Defendants MCM and Midland based on her assertion that those Defendants failed on numerous occasions to

reinvestigate her alleged accounts when she disputed the same. See 15 U.S.C. § 1681s-2(b); Green v. RBS Nat. Bank, 288 F. App'x 641, 642 (11th Cir. 2008) (*per curiam*).

In addition, Plaintiff has arguably stated FDCPA claims against Defendants MCM and Midland by alleging that those Defendants made false representations as to the character, amount, or legal status of Plaintiff's alleged debts to the three consumer reporting agencies. See 15 U.S.C. §§ 1692e(2), (8); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1189-90 (11th Cir. 2010) (acknowledging a private cause of action for violations of § 1692e). Plaintiff has also arguably stated FDCPA claims against Defendants MCM and Midland by alleging that those Defendants failed to cease collection efforts following Plaintiff's demands for validation. See 15 U.S.C. § 1692g(b); Shimek v. Weissman, Nowack, Curry & Wilco, P.C., 374 F.3d 1011, 1013 (11th Cir. 2004). Next, Plaintiff has arguably stated an FDCPA claim against Defendant Midland based on its alleged failure to provide a "thirty-day validation notice" or other disclosures following her initial communication. See 15 U.S.C. § 1692g(a); Vega v. McKay, 351 F.3d 1334, 1335-36 (11th Cir. 2003). Finally, Plaintiff has arguably stated a claim against Defendant MCM under both the FDCPA and the Telephone Consumer Protection Act based on her allegation that Defendant MCM repeatedly called her using an auto-dialing system. See 15 U.S.C. § 1692d; Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985); see also 47 U.S.C. § 227, Harmon v. Gulf Coast Collection Bureau, Inc., No. 10-81204-CIV, 2011 WL 777960, at *2 (S.D. Fla. Mar. 1, 2011).

Although Defendant Encore's role in the violations that Plaintiff alleges is unclear, the Court will allow each of the claims going forward against Defendants Midland and MCM to proceed against Defendant Encore as well, with the expectation that Defendants will

6

clarify the nature of parties' inter-relatedness or lack thereof. Accordingly, process shall issue as to all three Defendants.

## II. INSTRUCTIONS

**IT IS HEREBY ORDERED** that service of process shall be effected on all three Defendants. The United States Marshal shall mail a copy of the amended complaint (doc. no. 8) and this Order by first-class mail and request that the defendants waive formal service of the summons. Fed. R. Civ. P. 4(d). Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver. Fed. R. Civ. P. 4(d)(2). A defendant whose return of the waiver is timely does not have to answer the complaint until sixty (60) days after the date the Marshal mails the request for waiver. Fed. R. Civ. P. 4(d)(3). However, service must be effected within 120 days of the date of this Order, and the failure to do so may result in the dismissal of this lawsuit. Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the defendants, or upon their defense attorney or attorneys if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court. Except for the complaint, when submitting pleadings to the Clerk of Court, parties shall provide an original and one copy. Loc. R. 5.2. Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or counsel. Fed. R. Civ. P. 5; Loc. R. 5.1. Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number. Fed. R. Civ. P. 10(a). Any paper received by a

District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five (5) days notice of the scheduled deposition date, Plaintiff shall appear and permit her deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendant shall ensure that Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendant, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four (4) months after the filing of the defendant's answer.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R.

Civ. P. 33. Interrogatories shall not contain more than twenty-five (25) questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, she should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, she should also file a statement certifying that she has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Loc. R. 26.5.

Plaintiff must maintain a set of records for the case. If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents ($.50) per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve her response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Loc. R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Loc. R. 7.5, 56.1. A failure to respond shall indicate that there is no opposition to the motion. Loc. R. 7.5. Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically

9

controverted by an opposition statement. Should the defendant file a motion for summary judgment, Plaintiff is advised that she will have the burden of establishing the existence of a genuine issue as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if she desires to contest the defendant's statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these: any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

SO ORDERED this 9th day of July, 2013, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE