## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## DUBLIN DIVISION

| | | |
|---|---|---|
| **TERI LYNN HINKLE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:13-cv-00033-DHB-BKE** |
| **MIDLAND CREDIT** | ) | |
| **MANAGEMENT, INC. and** | ) | |
| **MIDLAND FUNDING, LLC,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Teri Lynn Hinkle is a frequent filer of lawsuits "in this division against various debt collectors asserting the same cause of action" under the Fair Credit Reporting Act.[1]  Indeed, in one of the "ten consumer credit cases that she ha[d] filed in this district between August 2011 and July 2012," this Court expressly recognized that the law has been explained to her "by this federal court in no uncertain terms time and again,"[2] noting that "[i]n every case, the United States Magistrate Judge issued a Report and Recommendation in which he

---

[1] *Hinkle v. ARS National Services, Inc.*, No. 3:12-CV-0052-DHB, Doc. 45 (Order Granting Motion for Summary Judgment), at 13 (entered on May 20, 2013).

[2] *Id.* at 14.

discusse[d] the ***permissible purpose of debt collection*** and recommend[ed] that the case be dismissed."[3]

Nevertheless, Hinkle persists, most recently in her opposition to the Motion for Summary Judgment (Doc. 85) submitted on behalf of Defendants Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. (collectively, "Midland"). As explained below, however, Hinkle's FCRA claims fail as a matter of law for the same reasons that this Court already has explained to her "in no uncertain terms time and again." Nor does Hinkle's opposition to Midland's motion for summary judgment (Doc. 97) identify any genuine issues of material fact regarding her claims under the Fair Debt Collection Practices Act. Accordingly, and for the reasons explained below, Midland respectfully requests that the Court grant Midland's motion for summary judgment and dismiss all of Hinkle's claims with prejudice.

## I.     The undisputed evidence confirms that Hinkle's FDCPA claim is time-barred insofar as it relates to the GE/Meijer Account.

Hinkle argues that her FDCPA claim is not time-barred to the extent it relates to the GE/Meijer Account because "Defendants **did not** cease reporting the [GE/Meijer] account" in 2009, as Midland explained in support of its motion for summary judgment. (Doc. 97 at ¶ 18) (emphasis in original). Instead, Hinkle insists that Midland "furnished account information to the CRAs continuously

---

[3] *Id.* at 13–14 (emphasis added).

from Nov. 17, 2008 to at least the end of Dec. of 2012 as shown on the Plaintiff's credit reports." (*Id.*) (citing Doc. 58, Exs. 10a–q).

However, the credit reports cited by Hinkle as supposed proof of Midland's continuing FDCPA violation actually show that Midland did cease reporting the GE/Meijer Account in 2009:



(Doc. 58, at 4 (Ex. 10-b)).  Thus, the evidence cited by Hinkle belies, rather than supports her claim that Midland continued to report the GE/Meijer Account to the CRAs after 2009.  Because Hinkle did not assert an FDCPA claim against Midland until well after the expiration of the one-year statute of limitations, Count IV is time-barred to the extent it relates to the GE/Meijer Account.[4]

---

[4] *See* 15 U.S.C. § 1692k(d) (claims under the FDCPA must be brought "within one year from the date on which the violation occurs."); *Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1193 (N.D. Cal. 2011) ("A plaintiff cannot allege a claim for violation of the FDCPA based on conduct that occurred after he paid his debt in full, and after the debt collector

**II.    Midland provided Hinkle with the validation notice required by § 1692g(a).**

Hinkle argues that Midland is not entitled to summary judgment on her claim under § 1692g(a) because its December 21, 2011 letter regarding the T-Mobile Account was not "received [until] after the Plaintiff issued her very clear verbal dispute on Dec. 27, 2011." (Doc. 97, at ¶ 43).  However, Hinkle's contention is irrelevant.  In fact, because Hinkle does not dispute that Midland *sent* the December 21 letter containing the requisite validation notice, Midland would be entitled to judgment as a matter of law even if she had *never* received it.[5]

In any event, Hinkle admits to receiving Midland's initial communication regarding the T-Mobile Account, and she does not dispute that it contained the validation notice required by § 1692g(a).  (*See* Doc. 97, at ¶ 20).  Accordingly, Midland is entitled to judgment as a matter of law on Hinkle's FDCPA claim to the extent it is based on the allegation that Midland violated § 1692g(a) by "fail[ing] . . . to provide the required 'Thirty Day Validation Notice' or disclosures to Plaintiff."  (*See* Doc. 8, at ¶ 92).

---

acknowledged that the debt was paid in full.  Under the FDCPA, that conduct is not taken in connection with the collection of a debt.") (citing *Winter v. I.C. System Inc.,* 543 F.Supp.2d 1210, 1213 (S.D. Cal. 2008)).

[5] *Antoine v. J.P. Morgan Chase Bank*, 757 F. Supp. 2d 19, 23 (D.D.C. 2010) ("Plaintiff alleges that he never *received* this notice, but presents no evidence that it was not *sent* or that it does not satisfy the FDCPA disclosure requirements.  . . .  Accordingly, because there is no factual dispute as to whether Defendant Shapiro & Burson mailed compliant notice on November 13, . . . [t]he Court therefore grants summary judgment to Defendant on Plaintiff's deficient-disclosure FDCPA claim.").

**III.  Midland was not required under § 1692g(b) to cease collection activities because Hinkle failed to dispute the debt in writing within 30 days.**

Hinkle claims in her response that, in Midland's "zeal to obtain summary judgment" (Doc. 97, at ¶ 45), it has ignored decisions from the Second, Fourth, and Ninth Circuits which "have upheld the clear and plain language of the statute supporting a consumer's right to dispute [a debt] verbally" (Doc. 97, at ¶ 44).  The cases cited by Hinkle are inapposite, however, as none of those decisions addresses whether a debt collector is required under § 1692g(b) to cease collection activities in response to a consumer's *verbal dispute*:

| **Cases cited by Hinkle** | **No writing required under *other* FDCPA sections** | **Writing required under § 1692g(b)** |
|---|---|---|
| ***Russell v. Absolute Collection Servs., Inc.*[6]** | The court explained that "[n]othing in the text of the FDCPA suggests that a debtor's ability to state a claim under **§ 1692e** is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g."[7] | The court did not hold, as Hinkle suggests, that a consumer's verbal dispute is sufficient to cause a debt collector to cease collection activities under **§ 1692g(b)**. |
| ***Clark v. Absolute Collection Serv., Inc.*[8]** | The question was "whether section **1692g(a)(3)** permits consumers to dispute the validity of a debt orally, or whether it imposes a writing requirement."[9] | The court did not hold that a verbal dispute is sufficient under § 1692g(b); in fact, it noted that "1692g(b) **explicitly require[s]** written communication."[10] |

---

[6] No. 12-2357, 2014 WL 3973792 (4th Cir. Aug. 15, 2014).

[7] *Id.* at *5 (emphasis added).

[8] 741 F.3d 487 (4th Cir. 2014).

| Cases cited by Hinkle | No writing required under *other* FDCPA sections | Writing required under § 1692g(b) |
|---|---|---|
| *Hooks v. Forman, Holt, Eliades & Ravin, LLC*[11] | As the court noted, "[t]he language of **§ 1692g(a)(3)** does not incorporate the writing requirement included specifically in **other sections** of the same statute."[12] | The court went on to explain that it "makes sense to require debtor consumers to take the *extra* step of putting a dispute in writing before claiming the more burdensome set of rights defined in **§ 1692g[(b)]**."[13] |
| *Camacho v. Bridgeport Fin. Inc.*[14] | "[T]here is no writing requirement implicit in **§ 1692g(a)(3)**."[15] | However, "**Section 1692g(b)** . . . provides that if the consumer notifies the collector of a dispute *in writing* within the 30–day period, the collector shall cease collection activities until he obtains the verification."[16] |

Thus, Hinkle ignores the fact that "[a]n oral notice of dispute of a debt's validity has different legal consequences than a written notice." *Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 869–70 (S.D. Tex. 2011).  As explained in the cases cited in her response, Hinkle apparently misapprehends the practical import of a verbal dispute versus a dispute in writing:

---

[9] *Id.* at 490 (emphasis added).

[10] *Id.* (emphasis added).

[11] 717 F.3d 282 (2d Cir. 2013).

[12] *Id.* at 286 (emphasis added).

[13] *Id.* (second emphasis added).

[14] 430 F.3d 1078 (9th Cir. 2005).

[15] *Id.* at 1082 (emphasis added).

[16] *Id.* at 1080 (first emphasis added).

As written, section 1692g(a)(3) triggers statutory protections for consumers independent of the later sections 1692g(a)(4), 1692g(a)(5), and 1692g(b).  For one, once a consumer disputes a debt orally under section 1692g(a)(3), a debt collector cannot communicate that consumer's credit information to others without disclosing the dispute. 15 U.S.C. § 1692e(8); *see Hooks,* 717 F.3d at 285; *Camacho,* 430 F.3d at 1082.  Also, if a consumer owes multiple debts and makes a payment, a debt collector cannot apply that payment to a debt that has been disputed orally. *See* 15 U.S.C. § 1692(h); *Hooks,* 717 F.3d at 285–86; *Camacho,* 430 F.3d at 1082.

*Clark*, 741 F.3d at 491.  On the other hand, the plain language of § 1692g(b) makes clear that a writing *is* required in order to trigger a debt collector's obligation to cease collection activities until the debt is verified.[17]  However, "if the consumer disputes the debt orally rather than in writing, the consumer loses the protections afforded by § 1692g(b); the debt collector is under no obligation to cease all collection efforts and obtain verification of the debt."  *Osborn*, 821 F. Supp. 2d at 869–70.

Again, Hinkle did orally dispute the T-Mobile Account by telephone on or about December 28, 2011;[18] however, the undisputed evidence shows that she did

---

[17] *See* 15 U.S.C. § 1692g(b) ("If the consumer notifies the debt collector **in writing** within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt.") (emphasis added).

[18] (*See* Doc. 8, at, at ¶ 20; Doc. 85-7, Ex. E, at 00035 ("Verbal Dispute within 45 days" recorded on "12/28/2011")).

not dispute the debt in writing until July 26, 2012,[19] well outside the 30-day validation period that began to run in December 2011.

## IV.   Hinkle has failed to raise a triable issue of fact as to whether Midland's collection calls violated § 1692d.

Hinkle insists that "[t]he FDCPA is a strict liability statute to protect consumers and non-consumers who deal with the debt collection industry," and that "[t]o determine [whether] behavior is harassment or abuse ONLY if there are many incidences of it is to say that the FDCPA should be narrowly construed and the debt collection industry should have free reign to abuse the public at will via telecommunications." (Doc. 97, at ¶ 37).  Respectfully, Hinkle is just wrong.

"Summary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls."  *Lardner v. Diversified Consultants Inc.*, No. 13-CV-22751, 2014 WL 1778960, at *8 (S.D. Fla. May 1, 2014) (granting summary judgment to defendant).[20]  Here, according to a "Call Log"

---

[19] (*See* Doc. 85-11, Ex. I) ("Response and Notice of Intent to Sue") (dated July 26, 2012).

[20] *See also Valle v. Nat'l Recovery Agency*, No. 10-CV-2775, 2012 WL 1831156 (M.D. Fla. May 18, 2012) (granting summary judgment to defendant debt collector despite evidence showing eighty-two calls to plaintiff over the span of 252 days); *Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (granting summary judgment to defendant debt collector where the debt collector had called the plaintiff fifty-seven times, even as many as seven times per day); *Waite v. Fin. Recovery Servs., Inc.,* No. 09-CV-2336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010) (granting summary judgment to defendant debt collector in spite of evidence showing that it had called the plaintiff 132 times over nine months, up to four times per day); *Druschel v. CCB Credit Servs., Inc.,* No. 10-CV-838, 2011 WL 2681637 (M.D. Fla. June 14, 2011) (recommending summary judgment in favor of defendant debt collector even though it

produced (and apparently prepared) by Hinkle, Midland called her only six (6)

times over a period of four (4) months:

| DATE | TIME | COMPANY | CALLER ID | |
|---|---|---|---|---|
| 12/27/2011 | 6:40 PM | MIDLAND | Unknown | 1-800-825-8131 |
| 12/28/2011 | 8:52 AM | MIDLAND | Unknown | 1-800-825-8131 |
| 4/7/2012 | 6:34 PM | MIDLAND | Unknown | 1-800-825-8131 |
| 4/8/2012 | 10:36 AM | MIDLAND | Unknown | 1-800-825-8131 |
| 4/30/2012 | 6:37 PM | MIDLAND | Unknown | 1-800-825-8131 |
| | | | | |
| | | | | |
| | | | | |

(PlainApp., at 00036).   "Absent evidence of harassing, oppressive, or abusive

conduct, the pattern and frequency of [Midland's] calls to [Hinkle] create no triable

issue of fact under . . . Section 1692d(5)."  *Valle*, 2012 WL 1831156, at *2.[21]

---

called the debtor fourteen times in just two weeks), *adopted by* 2011 WL 2681953 (M.D. Fla. July 11, 2011); *Carman v. CBE Group, Inc.,* 782 F. Supp. 2d 1223 (D. Kan. 2011) (granting summary judgment to defendant debt collector despite evidence of 149 calls over a period of two months); *Pugliese v. Prof. Recovery Serv., Inc.,* No. 09-CV-12262, 2010 WL 2632562 (E.D. Mich. June 29, 2010) (granting summary judgment to defendant debt collector that called plaintiff 350 times over eight months); *Katz v. Capital One,* No. 09-CV-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (granting summary judgment to defendant debt collector that called plaintiff fifteen to seventeen times after receiving her cease and desist letter disputing that she owed the debt).

[21] In her response, Hinkle cites the Eleventh Circuit's unpublished decision in *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230 (11th Cir. 2011).  (*See* Doc. 97, at ¶ 35 n.4). There, the court reversed the district court's order granting summary judgment to the defendant debt collector on the consumer's § 1692d(5) claim.  Unlike Hinkle, however, the plaintiff in *Meadows* had put forth substantial evidence showing that "she received approximately 300 calls over a two and a half year period regarding debts she did not owe and people she did not know"; that the defendant had "used an automated dialer" to make the calls; and that "several times the calls woke her up from sleep and caused her difficulty sleeping."  *Id.* at 233.  Hinkle, on the other hand, rests her claim upon the six calls listed on her "Call Log," as well as a handful of additional attempts by Midland to reach her on a landline number *she no longer was using.*  (*See* Doc. 97, at ¶ 22) ("MCM did not cease calling until after the Plaintiff stopped answering and then it began calling one of the Plaintiffs old land line phone numbers according to its own

**V.     Hinkle's claim under § 1692e fails because the undisputed evidence shows that Midland properly flagged her account as disputed in its communications with the CRAs.**

Even though Hinkle does not dispute that Midland "appropriately flagged the accounts as 'disputed' in its communications with the CRAS,"[22] she claims that Midland nevertheless violated § 1692e by making allegedly false or misleading statements to the CRAs because "[t]he requirement to 'flag the accounts' as disputed does not afford the Defendants' the ability to furnish information to the CRAs that it knows or should know is false and . . . is further required under the FCRA rather than the FDCPA."  (Doc. 97, at ¶ 42).

On this point, Hinkle's argument ignores entirely the overwhelming weight of authority cited in Midland's motion for summary judgment.  Again, "the FDCPA specifically contemplates the circumstances presented here, and obligates only that a debt collector must 'communicate' the disputed nature of the debt" in order to satisfy its obligations to adequately inform credit reporting agencies about the debt.  *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 161 (D. Me. 2011) (citing *Wilhelm v. Credico, Inc.,* 519 F.3d 416, 418 (8th Cir. 2008) ("[I]f a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has

---

internal records provided in discovery.").  But, as Hinkle intimates, since she no longer used those "old land line phone numbers," she necessarily could not have been "annoy[ed], harass[ed], or abuse[d]" by those calls.

[22] (Doc. 85, at 7).

disputed a particular debt.")).  In fact, as the Eighth Circuit explained in *Wilhelm*, "[t]his interpretation is confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the Fair Debt Collection Practices Act," which provided that:

> 1.    Disputed debt. If a debt collector knows that a debt is disputed by the consumer . . . *and reports it to a credit bureau,* he must report it as disputed.
>
> 2.    Post-report dispute. *When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.*

*Wilhelm*, 519 F.3d at 418 (emphasis in original) (citing FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988)).

Because  the undisputed "evidence before the Court firmly establishes that, in reporting the debt to the credit reporting agencies, [Midland] specifically flagged the debt as disputed," Midland is entitled to judgment as a matter of law on Count IV.  *Poulin*, 760 F. Supp. 2d at 161.[23]

## VI.    Midland obtained Hinkle's credit report for the permissible purpose of "collection" of her accounts.

"[A]s the assignee of [Hinkle's T-Mobile] account, [Midland] was entitled under the FCRA to obtain plaintiff's credit report from consumer reporting agencies for the permissible purpose of review or collection of the assigned debt." *Ostrander v. Unifund Corp.*, No. 07-CV-0086, 2008 WL 850329, at *3 (W.D.N.Y.

---

[23] (*See* Doc. 85-9, Ex. G) ("[W]e have requested that the three major consumer credit reporting agencies change the status of this account to 'Disputed.'"); (Doc. 85-10, Ex. H) (same).

Mar. 28, 2008).[24]  Nevertheless, Hinkle claims in her response that "the section of the FCRA the Defendants claim provides **them** with a permissible purpose does not in fact pertain to them at all but solely to the CRAs."  (Doc. 97, at ¶ 47) (emphasis in original).

But Hinkle knows better,[25] because "[a]t the time of filing, [she] had already filed eight [now **nine**] prior cases in this division against various debt collectors asserting the same cause of action."  *Hinkle v. ARS National Services, Inc.*, No. 3:12-CV-0052-DHB, Doc. 45 (Order Granting Motion for Summary Judgment), at 13.  And "[i]n every case, the United States Magistrate Judge issued a Report and Recommendation in which he discusse[d] the **permissible purpose of debt collection** and recommend[ed] that the case be dismissed."  *Id.* at 14 (emphasis added).

Nor may Hinkle's FCRA claim survive summary judgment based on her contention that Midland "most certainly could not have been obtaining Plaintiff's consumer credit report on **behalf of a creditor**," which she claims is required for

---

[24] *See also* 15 U.S.C. § 1681b(a)(3)(A) (stating that a credit report may be provided "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the review or *collection* of an account of the consumer.") (emphasis added).

[25] For one, the case Hinkle cites for her above-quoted proposition itself acknowledged that "the Fourth Circuit explicitly incorporated the 'permissible purposes' under § 1681b into the civil liability provisions of the FCRA found in [§§] 1681n and 1681o . . . which appl[y] to 'any . . . user of information' that willfully or negligently fail[s] to comply with the statute's requirements."  *Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 460 (E.D. Va. 2009).

Midland to have a "permissible purpose" for obtaining her credit report. (Doc. 97, at ¶ 49) (emphasis in original). "[A]s the Court has repeatedly explained"—*to Hinkle*, in yet *another* case—"it is not necessary for Plaintiff to have had direct dealings with Defendant; for example, one of the 'permissible purposes' for obtaining a consumer report under 15 U.S.C. § 1681b(a)(3)(A) would permit a collection agency retained by a creditor to collect on an account of the consumer." *Hinkle v. CBE Grp.*, No. 11-CV-091, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012) *report and recommendation adopted*, 2012 WL 676267 (S.D. Ga. Feb. 29, 2012).

And the same goes for debt collectors, as § 1681b "permits a debt collector to request a credit report if it uses the report to review an account." *Pinson v. Monarch Recovery Mgmt., Inc.,* No. 12-CV-80480, 2013 WL 961308, at *2 (S.D. Fla. Mar. 12, 2013) (citation omitted).[26] Here, Hinkle "acknowledges that [s]he is a 'debtor,' that [Midland] is a 'debt collector,' and that [Midland] was attempting to 'collect a debt.'" *Ekhlas v. NCO Fin. Sys., Inc.*, No. 13-CV-0978, 2013 WL 6190660, at *2 (C.D. Cal. Nov. 25, 2013).[27] "Therefore, by alleging that

---

[26] *See also Huertas v. Galaxy Asset Management,* 641 F.3d 28, 34 (3rd Cir. 2011) ("[T]he statute expressly permits distribution of a consumer report to an entity that intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.").

[27] (*See, e.g.*, Doc. 8, at ¶¶ 39) ("MCM, and Midland operate as a debt buying and collection enterprise."); (*id.* ¶ 92) ("Midland . . . in connection with the collection of a debt"); (*id.* ¶ 94) ("MCM and Midland . . . are still engaging in collection actions . . .").

[Midland] obtained [her] consumer report and then attempted to collect a debt, [Hinkle] has pled [her]self out of [an] FCRA claim by including details contrary to [her] claim." *Salmas v. Portfolio Recovery Associates, LLC*, 13-CV-0575, 2013 WL 6182614, at *3 (C.D. Cal. Nov. 25, 2013).[28]

Accordingly, as this Court has found "time and again," Hinkle's FCRA claim fails as a matter of law and must be dismissed because Midland obtained her credit report for the permissible purpose of "collection" of her accounts.

## VII. The FCRA does not provide a private right of action for inaccurate reporting.

Hinkle apparently agrees with Midland that she cannot state a claim under the FCRA based upon Midland's alleged furnishing of false or inaccurate information to the CRAs.[29]  Therefore, she necessarily also concedes that Midland is entitled to summary judgment on Counts I through III to the same extent. *See Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Because Mr. Nawab lacks standing to bring claims under § 1681 s–2(a), the district court properly granted summary judgment as to Counts I and II.").

---

[28] (*See* Doc. 97, at ¶ 63) ("The telephone calls placed to the Plaintiff's home were for the purpose of collection . . . .").

[29] (*See* Doc. 97, at ¶ 59) ("Defendants voluminous arguments on § 1681s-2(a) . . . are nothing more than a self-serving diatribe designed to distract and mislead the Court as Plaintiff made no allegations under 15 U.S.C. § 1681s-2(a) in her Complaint.").

## VIII. Hinkle has failed to raise a triable issue of fact regarding the reasonableness of Midland's investigation.

Lastly, Hinkle asserts that Midland is not entitled to summary judgment on her FCRA claims because "Defendants have failed to demonstrate exactly what they did to meet the burden of a 'reasonable investigation,' which would be a question of ultimate material fact." (Doc. 97, at ¶ 62). However, "[s]ection 1681s–2(b) generally requires credit information furnishers to conduct a *reasonable* investigation upon receiving notice of a dispute," and "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Howard v. Pinnacle Credit Servs., LLC*, No. 09-CV-0085, 2010 WL 2600753, at *3 (M.D. Ga. June 24, 2010) (quotation omitted; emphasis in original).

As a matter of law, "[a]bsent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, ***the furnisher need not do more than verify that the reported information is consistent with the information in its records***." *Id.* (emphasis added). Here, Hinkle makes no such allegations of fraud or identity theft, nor did she make out a notarized fraud affidavit.[30] "Thus, in order to defeat [Midland's] motion for summary judgment, Plaintiff must establish that upon being notified of Plaintiff's consumer disputes, [Midland] failed to conduct

---

[30]*See* **Exhibit A**, Transcript of March 11, 2014 Deposition of Teri L. Hinkle at 107:23 ("Q.  . . . . [Midland's letter requesting information regarding her dispute] did ask if it's fraud to provide a copy of a police report, FTC, affidavit, or notarized fraud affidavit.  And you didn't provide that, right?   A.    Again, why would I? No.").

an objectively reasonable investigation to determine whether the disputed information was inaccurate." *Ware v. Bank of Am. Corp.*, No. 13-CV-1647, 2014 WL 1302605, at *8 (N.D. Ga. Jan. 8, 2014). "The burden of showing the investigation was unreasonable is on the plaintiff." *Id.*

Hinkle comes nowhere close to identifying any genuine issue of material fact sufficient to meet her burden and sustain her claim in the face of Midland's motion. In fact, there is no dispute that Midland conducted a reasonable investigation upon receiving notice from the CRAs of Hinkle's dispute:

> 15. In July 2012, MCM received notice of a dispute from the credit bureaus. MCM verified that it was furnishing the information provided by Debt Recovery Solutions, LLC, and continued to report the T-Mobile Account as "disputed." *See* **Ex. E** at MIDLAND-HINKLE-000033-34. In addition, on July 21, 2012, MCM sent Plaintiff a letter requesting additional documentation as part of its investigation. *See* **Exhibit H**. Plaintiff responded that she could not furnish MCM with any documentation because the account was not hers. *See* **Exhibit I**.

(Doc. 85-2, at ¶ 15).

Nonetheless, Hinkle contends that Midland cannot rely on its own records to show that it conducted a reasonable investigation of her dispute because "[b]oth alleged accounts were purchased not from original creditors but pursuant to 'as is' contracts with 'no warranty' as to accuracy, validity, or authenticity from other Debt Buyers," and because "[t]hose records contain nothing but hearsay information from other buyers without any authenticating evidence from a

qualified source as to its truth and validity." (Doc. 97, at ¶¶ 62–63). She is mistaken on both counts.

First, as a matter of law, Midland was entitled to rely on the information it received from the original creditor, and "[t]his remains true even when the consumer has specifically challenged whether the amount alleged is due at all." *Poulin*, 760 F. Supp. 2d at 161.[31]  Indeed, according to the FTC (which Hinkle admits "can certainly be considered an expert authority on the statute"[32]), a debt buyer is justified in relying upon certain information from the original creditor, "such as the name of the original creditor, the original creditor's account number, the debtor's social security number, the date of last payment, and the date of charge-off."[33]  And in response to Hinkle's dispute, Midland "verified that it was furnishing the information provided by Debt Recovery Solutions, LLC," including the same information that the FTC deems sufficiently reliable—the name of the original creditor, the original account number, the last four digits of Hinkle's SSN, the date the account was opened, and the date the account was charged off:

---

[31] *See also Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) ("Within reasonable limits, [Defendants] were entitled to rely on their client's statements to verify the debt."); *Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002); *In re Cooper*, 253 B.R. 286, 292 (Bankr. N.D. Fla. 2000) ("Attorneys and debt collectors are entitled to rely on the information they receive from the creditor."); *Ducrest v. Alco Collections, Inc.,* 931 F. Supp. 459, 462 (M.D. La. 1996).

[32] (Doc. 97, at ¶ 51).

[33] Federal Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* (Jan. 2013), at 36.

| | |
|---|---|
| Name | TERI HINKLE |
| Street-1 | 6080 PARK BV |
| Street-2 | 6080S |
| City | SOUTH ROCKWOO |
| State | MI |
| Zip | 48179 |
| SSN# | *****6359 |
| Home# | 7343790753 |
| Sale Amount | 300.8 |
| Orig Bal$ | 300.8 |
| C/O Date | 2007/12/29 |
| Open Date | 03/04/2006 |
| Creditor | T-MOBILE |
| DOB | 19520526 |

(Doc. 85-4).

Second, Hinkle is wrong to suggest that Midland could not reasonably rely on supposed hearsay contained in the records it obtained from the assignors of her accounts.  Midland's motion for summary judgment need be supported only with "[a]n affidavit or declaration . . . on personal knowledge, [which] set[s] out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c).  Here, Ms. Ross's affidavit is expressly based upon her "position, personal knowledge," and on "records kept in the regular course of [Midland's] business either by [her]self or those under a duty to maintain [such] records."  (Doc. 85-2, at ¶ 5).[34]   And the

---

[34] *See Stroud v. Bank of Am.*, No. 11-CV-22489, Doc. 143 (Order Denying Plaintiff's Motion in Limine), at 4 (overruling plaintiff's objections to affidavit submitted in support of motion for summary judgment where the affiant "state[d] he [was] responsible for obtaining and examining FIA's records with regard to [plaintiff's] account and that he did, in fact, examine those records and has knowledge of their contents") (entered on Aug. 1, 2012); *see also Stroud v. Bank of Am.*, 886 F. Supp. 2d 1308, 1314 (S.D. Fla. 2012) ("In this case, BOA has more than

"documents attached to the Declaration are either non-hearsay or could be reduced to admissible form," which is all that is required for their admissibility in support of Midland's motion for summary judgment. *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 112, (11th Cir. 2010).

In sum, "the evidence establishes that [Midland] reviewed all of its information, along with the information provided by the credit reporting agencies." *Howard*, 2010 WL 2600753, at *4. At the same time, "[Hinkle] has failed to raise a genuine issue of material fact that [Midland's] investigation was unreasonable." *Ware*, 2014 WL 1302605, at *8.[35] She "has presented no evidence that the procedures employed by [Midland] to investigate the reported disputes were in any respect unreasonable," and she "has neither sought discovery on nor produced any evidence whatsoever about the procedures utilized by [Midland]." *Id.* at *8.

"Put plainly," and just as this Court has found before, "the factual matter offered by Plaintiff in her amended complaint establishes nothing beyond speculation as to the 'mere possibility' of a violation of the FCRA." *Hinkle*, 2012

---

amply demonstrated that it conducted a reasonable investigation, that the result of that investigation provided no reason to reach any conclusion other than that the disputed account belonged to Stroud, and that it accurately reported the results of the investigation. For his part, Stroud has failed to provide any *evidence,* as opposed to merely his own allegations or hunches or theories, that the investigation was unreasonable or that BOA reported any inaccurate information. BOA is therefore entitled to summary judgment.").

[35] "[She] has also failed to show any actual inaccuracies that Defendant could have found through conducting a reasonable investigation. . . . Plaintiff's failure to demonstrate or establish any actual inaccuracies in the furnished information that a reasonable investigation could have discovered is a separate, sufficient basis for summary judgment." *Id.* at *8, *9.

WL 681468, at \*3 (quotations omitted) (affirming dismissal of FCRA claim on the pleadings where the complaint "alleged no facts tending to show that [Defendant] 'willfully' or 'negligently' failed to comply with the FRCA").  Therefore, "[b]ased on the evidence before the Court establishing that [Midland] reviewed all of the information it received regarding [Hinkle's] dispute," the Court should "find[] that [Midland] conducted a reasonable investigation" and is therefore "entitled to summary judgment as to Plaintiff's FCRA claims."  *Ware*, 2014 WL 1302605 at \*8.[36]

## **RESPONSES TO HINKLE'S OBJECTIONS**

The Court should overrule Hinkle's objections to the affidavit of Angelique Ross (Doc. 85-2).  Hinkle objects to Ms. Ross's affidavit as "untrustworthy"[37]

---

[36] Furthermore, "[e]ven assuming that [Midland's] conduct was not permitted under the FCRA, Plaintiff's complaint only provides conclusory statements that Defendant[s] violated 15 U.S.C. § 1681b by obtaining Plaintiff's consumer report without a permissible purpose." *Pyle v. First Nat. Collection Bureau*, No. 12-CV-00288, 2012 WL 1413970, at \*3 (E.D. Cal. Apr. 23, 2012).  Without any "factual basis to support [her] claim[,] Plaintiff merely concludes that, because [she] did not owe [Midland] any debt and [Midland] purportedly obtained a copy of [her] credit report, [Midland] was in 'willful violation of the FCRA.'"  *Id.*  However, Hinkle's "conclusory statements and allegations . . . do not contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Id.* at \*4 (quotation omitted).  "Merely stating the legal conclusion that Defendant acted willfully but failing to provide any factual basis to support these causes of action is insufficient."  *Id.* (quotation omitted).

[37] Hinkle suggests that the Court should strike Ms. Ross's affidavit because she "has proved [*sic*] herself to be an unqualified witness without first-hand knowledge when the Midland Defendants proffered her as an expert witness in an on-going case in the Northern District of California."  (Doc. 97, at ¶ 69 n.38) (citing Discovery Order, *Gold v. Midland Credit Management, Inc.*, No. 13-CV-02019, Doc. 65, p. 4 (entered on July 9, 2014)).  There, however, Ms. Ross was not found to lack sufficient "first-hand knowledge" of Midland's business records, nor was she found to be "unqualified" as an expert.  Rather, Ms. Ross simply had indicated at her Rule 30(b)(6) deposition that she did not possess certain "specific information" responsive to the

because it relies on supposed "hearsay" and because "the information [Ms. Ross] relies on came not from a creditor but the sellers (other [debt] buyers)."  (Doc. 97, at ¶ 69).  "However, this argument is unavailing as a debt buyer can authenticate a creditor's records in a collection action . . . [u]nder the adoptive business records exception to the hearsay rule."  *Clark v. v. Main St. Acquisition Corp.*, No. 12-CV-408, 2013 WL 2295879, at \*5 (S.D. Ohio 2013) *aff'd sub nom. Clark v. Main St. Acquisition Corp.*, 553 F. App'x 510 (6th Cir. 2014).

As explained above, Ms. Ross's affidavit is expressly based upon her "position, personal knowledge," and on "records kept in the regular course of [Midland's] business either by [her]self or those under a duty to maintain [such] records,"[38] and the "documents attached to the Declaration are either non-hearsay or could be reduced to admissible form."  *Saunders v. Emory Healthcare, Inc.*, 360 F. App'x 110, 112, (11th Cir. 2010).  "While the [attached documents] are not directly from the original creditor, they are provided by company persons who have knowledge of company processes and relationship with original creditors, and how charged-off receivables are sold and purchased from original creditors."  *Hickman*, 2012 WL 4062694, at \*7.  Thus, "the records . . . were sufficiently authenticated under the business records exception to the hearsay rule," and Ms.

---

plaintiff's topics of examination.  And in the discovery order (cited by Hinkle), the district court merely ordered Midland to make available an additional witness who could provide testimony on the topics identified by the plaintiff.

[38] (Doc. 85-2, at ¶ 5).

Ross's affidavit "fulfills the elements of the business records exception set forth in Federal Rule of Civil Procedure 803." *Id.*[39]

Second, the Court also should overrule Hinkle's objection and decline her request for "the Court to strike [Midland's] Motion for Summary Judgment in its entirety"[40] based on Midland's failure to identify Ms. Ross as an "individual likely to have discoverable information." Fed. R. Civ. P. 26(a)(1). Any failure on Midland's part to disclose Ms. Ross "was substantially justified or is harmless" and therefore unworthy of sanctions under Rule 37(c)(1) because:

1. Ms. Ross is not an "individual likely to have discoverable information." Rather, Ms. Ross is the "custodian" of the documents attached to her affidavit, or an otherwise "qualified witness" capable of attesting to their authenticity. Fed. R. Evid. 803(6)(D). Thus, "[f]rom the Court's perspective, the affidavit served no purpose other than to authenticate the attached documents."

---

[39] *See also United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984) ("To be admitted under [Rule 803(6)] the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness. Nor is it required that the records be prepared by the business which has custody of them.") (quotations and citations omitted); *Hickman v. Alpine Asset Mgmt. Grp., LLC*, No. 11-CV-1236, 2012 WL 4062694, at *7 (W.D. Mo. Sept. 14, 2012) ("To lay an adequate foundation under the business records exception, the custodian of records need not have personal knowledge of the circumstances in which acquisition, use and filing occurred."); Wright & Miller, 30C Fed. Prac. & Proc. Evid. § 7047.

[40] (Doc. 97, at ¶ 71).

*Graham v. Metro. Life Ins. Co.*, No. 07-CV-164 , 2009 WL 73802, at *6 (S.D. Miss. Jan. 8, 2009) *aff'd,* 349 F. App'x 957 (5th Cir. 2009).[41]

2.      In fact, Hinkle made no objection to similar records produced during discovery as attachments to the authenticating affidavit of Patrick Minford, which likewise was based, in part, on "information received in the ordinary course of business while performing [his] duties at Midland, and upon a review of Midland's business records."  (Minford Aff., at ¶ 2).

3.      Nor did Hinkle seek to depose Minford or another previously identified Midland representative,[42] precisely because, as she notes in her Response, "no individual person [at Midland] communicated with the Plaintiff."  (Doc. 97, at ¶ 10).  Midland did not identify Ms. Ross (or Mr. Minford) as an "individual likely to have discoverable information," because "all written communication [with her] was 'system generated' and not generated by a live person."  (Doc. 97, at ¶ 10).

4.      Furthermore, even though each of the documents attached to Ms. Ross's affidavit previously had been produced to her during discovery, Hinkle

---

[41] *See also Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09-CV-02080, 2011 WL 721263, at *4 (D. Colo. Feb. 23, 2011) ("Because the Custodian of Records at Pinnacol Assurance will not give substantive testimony at trial, the Court finds that Defendant's failure to disclose his name and contact information was harmless."); *U.S. Tech. Corp. v. Ramsay*, No. 08-CV-00218, 2011 WL 2516597 (S.D. Miss. June 23, 2011) (finding "that U.S. Technology's failure to disclose Atkinson is harmless" despite "failure to disclose Atkinson as records custodian" because "no prejudice to the defendants will result if Atkinson is permitted to testify as a witness").

[42] (*See* Doc. 97, at ¶ 8) (noting that Midland previously identified a separate corporate representative in response to Hinkle's interrogatory regarding any witnesses Midland may call upon to testify at trial).

indicated to Midland's counsel and to the Court that she had neither the need nor inclination to depose a Midland representative concerning those (or any other) documents:

| | |
|---|---|
| THE COURT: | . . . But it sounds like right now you are pretty reasonably satisfied you have everything, and you have to take some depositions to see whether these other speculations of yours might actually have some substance to them. Is that a fair characterization of where we sit? |
| MS. HINKLE: | I would say on that issue that it is. I may not need to based on what they did give me and the facts of the case. |

* * *

| | |
|---|---|
| THE COURT: | I think Ms. Hinkle has had enough of this document discovery anyway. She is ready to get to the deposition and get this over with. |
| MS. HINKLE: | And you are absolutely right. I really truly do not believe other than the purchasing sale [*sic*] agreements that there is anything they could give me. |

(Doc. 77, at 7:14–21).

5.    Indeed, Hinkle was satisfied with the documents that Midland had produced, and never sought to depose a representative of Midland about their authenticity or their content, even though the Court admonished her to conduct any depositions she thought necessary before the close of discovery:

| | |
|---|---|
| THE COURT: | Now, Ms. Hinkle, I do want to tell you that you do have 45 days but you really need to give some |

> serious consideration to whether there are any other depositions you want to take because you are not going to get another bite at this. This is the last opportunity to conduct discovery in the case.

(Doc. 77, at 28:19–24).

Accordingly, the Court should decline to strike Ms. Ross's affidavit or Midland's Motion for Summary Judgment.

## <u>CONCLUSION</u>

The undisputed evidence demonstrates that Hinkle's FDCPA claims fail as a matter of law. Hinkle's FCRA claims do not simply fail as a matter of law; Hinkle knows that they do, as this Court noted in one of the "ten consumer credit cases that she ha[d] filed in this district between August 2011 and July 2012."[43]  There, the Court "easily conclude[d] that the instant lawsuit was filed in bad faith and for the purpose of harassment."[44]  And the same is true here.  Therefore, Midland asks that the Court retain jurisdiction solely for the purpose of awarding attorney's fees to Midland under 15 U.S.C. § 1681n(c), pursuant to a separate motion to follow.

Respectfully submitted this the 19th day of September, 2014.

/s/ Matthew B. Ames
Matthew B. Ames / Ga. Bar No. 015898
Joshua M. Moore / Ga. Bar No. 520030
30 Ivan Allen Jr. Blvd. NW, Suite 700
Atlanta, Georgia  30308

---

[43] *Hinkle v. ARS National Services, Inc.*, No. 3:12-CV-0052-DHB, Doc. 45 (Order Granting Motion for Summary Judgment), at 14 (entered on May 20, 2013).

[44] *Id.* at 15.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT has been served upon the following by causing a copy of the same to be electronically filed with the Clerk of Court using the CM/ECF system and by United States Mail, properly addressed and postage prepaid, on this 19th day of September, 2014:

Teri Lynn Hinkle
322 Bethel Street
Eastman, Georgia 31023

*/s/ Matthew B. Ames*
Matthew B. Ames
Georgia Bar No. 015898