ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2015 JAN -6  AM 9:48

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

TERI LYNN HINKLE,                    *
                                     *
        Plaintiff,                   *
                                     *
        v.                           *      CV 313-033
                                     *
MIDLAND CREDIT                       *
MANAGEMENT, INC., MIDLAND            *
FUNDING, LLC, and ENCORE            *
CAPITAL GROUP, INC.,                 *
                                     *
        Defendants.                  *

---

## O R D E R

---

Before the Court is Defendants' motion for summary
judgment of claims asserted by Plaintiff, proceeding pro se,
under the Fair Debt Collection Practices Act ("F.D.C.P.A."),
15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act
("F.C.R.A."), 15 U.S.C. § 1681 et seq. For the reasons stated
herein, the motion is **GRANTED**.

### I. INTRODUCTION

#### A. Factual Background

This is a dispute between a consumer and debt collection
companies regarding two alleged debts (the "GE/Meijer account"
and the "T-Mobile account"). Midland Credit Management, Inc.
and  Midland Funding, LLC, are wholly-owned subsidiaries of

Encore Capital Group, Inc. (Ans. to Am. Compl. ¶¶ 9, 10.) For purposes of this Order, the Court refers to these entities collectively as "Defendants."

1. The GE/Meijer Account

On October 1, 2008, Defendants sent a debt collection letter to Plaintiff seeking a resolution of the GE/Meijer account, which had an outstanding balance of approximately $400. (Defs.' Ex F.) In the letter, Defendants extended a settlement offer of approximately $240. (Id.)

On November 17 and December 15, 2008, Defendants furnished information regarding the GE/Meijer account to credit reporting agencies ("CRAs"). (Pl.'s App. of Exs. at 18.) Defendants identified, or "flagged," the account as a debt that Defendants were attempting to collect. (Id.)

In December 2008, the GE/Meijer account was paid in full in accordance with the terms in Defendants' October 1 debt collection letter. (Pl.'s Ex. 10-b.) On January 13, February 15, and March 16, 2009, Defendants reported to CRAs that the account was paid in full. (Pl.'s App. of Exs. at 18.) After the March 16 report, Defendants ceased furnishing information regarding the GE/Meijer account to CRAs. (Id.)

2. The T-Mobile Account

On December 21, 2011, Defendants sent another debt collection letter to Plaintiff seeking a resolution of the T-

2

Mobile account, which had an outstanding balance of approximately $300. (Defs.' Ex. F.) Defendants offered to settle the account for approximately $270. (Id.) The letter provides the following information:

(a)   Current balance: $300.80; amount due: $270.72;

(b)   Original creditor: T-Mobile,
      Current owner: Midland Funding, LLC,
      Current servicer: MCM;

(c)   "Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid;"

(d)   "If you notify MCM, in writing, within (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment;" and

(e)   "If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor."

(Id.) The letter also states that any information Defendants obtain will be used for the purpose of debt collection. (Id.)

On or about December 27, 2011, Plaintiff orally disputed the T-Mobile account during a telephone conversation with Defendants. (Am. Compl. ¶ 20.) Defendants continued their debt collection activities after that phone call. (Id. ¶ 22.) On July 26, 2012, Plaintiff mailed a letter to Defendants disputing the T-Mobile account and informing them of her

3

intent to file a lawsuit. (Pl.'s App. of Exs. at 34.)

Defendants placed several telephone calls to Plaintiff attempting to resolve the T-Mobile account. (Id. at 36.) Plaintiff's call log shows that Defendants called Plaintiff five times:

| | | |
|---|---|---|
| December 27, 2011 | 6:40 pm | 1.800.825.8131 |
| December 28, 2011 | 8:52 pm | 1.800.825.8131 |
| April 7, 2012 | 6:34 pm | 1.800.825.8131 |
| April 8, 2012 | 10:36 am | 1.800.825.8131 |
| April 30, 2012 | 6:37 pm | 1.800.825.8131 |

(Id.)

On a monthly basis from February 2012 through March 2013, Defendants reported the T-Mobile account to CRAs as unpaid and disputed. (Ross Aff. ¶ 14; Defs.' Ex E.) In July and August 2012, Defendants received notice from two CRAs, Equifax and Experian, that Plaintiff had filed a dispute with CRAs regarding the T-Mobile account. (Defs.' Ex E.)

After receiving this notice from the CRAs, Defendants conducted an investigation. (Ross Aff. ¶ 15.) Defendants verified that they were reporting to the CRAs the same information that they had received from the original creditor. (Id.) Defendants obtained Plaintiff's credit report during the course of their debt collection efforts to review Plaintiff's disputed debt. (Defs.' Mot. for Summ. J. at 16.) Defendants also requested information from Plaintiff regarding her contention that the T-Mobile account was not hers, but

4

Plaintiff provided no information or assistance. (Defs.' Ex. H.)

### B. Plaintiff's Objection to the Affidavit of Ms. Angelique Ross as Records Custodian

Defendants submit the affidavit of Ms. Angelique Ross ("Ross") as custodian of Defendants' records regarding Plaintiff's disputed accounts. Plaintiff objects that Ross is untrustworthy and her records are unauthenticated. (Pl.'s Resp. to Defs.' Mot. for Summ. J. ¶ 69.) She asks the Court to strike the affidavit, the corresponding records, and Defendants' motion for summary judgment in its entirety. (Id.) Ross testifies in her affidavit that the attached records are kept in the regular course of business and that she has personal knowledge of the facts contained therein. (Ross Aff. ¶¶ 4, 5.) The record does not support Plaintiff's assertion that Ross is unqualified to serve as records custodian or that the business records attached to the Ross Affidavit are inadmissible. The Court **OVERRULES** Plaintiff's objection and **DENIES** her motion to strike.

### C. Plaintiff's Errata Sheet

On September 29, 2014, Plaintiff filed a "Motion to Supplement Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment," in which she requests that the Court include her errata sheet in the record. (Doc. no. 103.)

5

Generally, a deponent has thirty days to review his or her deposition testimony and to file any corrections in the form of an errata sheet. Fed. R. Evid. 30(e). On March 11, 2014, Defendants took Plaintiff's deposition. (Defs.' Reply to Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. A.) The errata sheet is one page in length and contains information that is immaterial to the resolution of Plaintiff's claims. However, because Plaintiff is proceeding pro se, the Court **GRANTS** the motion (doc. no. 103) and allows her errata sheet to be included in the record.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)(internal

6

punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)(explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997)(per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by

7

"demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56 and Local Rule 56.1.

The Clerk has given the non-moving party notice of the motion for summary judgment and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. no. 86.) Therefore,

8

the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985)(<u>per curiam</u>), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### B. Discussion

#### 1. F.D.C.P.A. Claims

##### (a) GE/Meijer Account

Plaintiff alleges that Defendants provided false information to CRAs regarding the GE/Meijer account in violation of the F.D.C.P.A. Defendants argue that Plaintiff's F.D.C.P.A. claim is time-barred insofar as it relates to the GE/Meijer account. An action to enforce any liability created by the F.D.C.P.A. may be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). In this case, the GE/Meijer account was paid in full in December 2008. Defendants last reported information regarding this account to the CRAs on March 16, 2009. Plaintiff commenced this action on April 4, 2013. Therefore, any F.D.C.P.A. claim based on the GE/Meijer account is time-barred.

##### (b) T-Mobile Account: Validation Notice

Plaintiff insists that Defendants failed to provide her with the statutorily-required validation notice in violation of 15 U.S.C. § 1692g(a). Defendants respond that the initial collection letter that Defendants sent to Plaintiff regarding

9

the T-Mobile account on December 21, 2011, contained all of the elements outlined in § 1692g.

That provision requires that a debt collector shall send a consumer a written notice, in the initial communication or within five days after the initial communication, containing the amount of the debt. 15 U.S.C. § 1692g(a)(1). Defendants' letter to Plaintiff informed her that her current balance was $300.80 and her amount due was $270.72. The statute also requires disclosure of the creditor's identity. 15 U.S.C. § 1692g(a)(2). Defendants explained that the original creditor is T-Mobile, the current owner is Midland Funding, LLC, and the current servicer of the obligation is Midland Credit Management, Inc.

Section 1692g(a) also imposes an obligation on a debt collector to include three different statements in their initial communication to a consumer explaining the proper procedures for a consumer to validate a disputed debt. First, the letter must state that

> unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

15 U.S.C. § 1692g(a)(3). With regard to this requirement, Defendants' letter informed Plaintiff that

> [u]nless you notify MCM within thirty (30) days after receiving this notice that you dispute the

10

> validity of the debt, or any portion thereof, MCM
> will assume this debt to be valid.

(Defs.' Ex. F.) Under the statute, the second statement that

an initial debt collection letter must include regarding the

validation procedures shall explain that

> if the consumer notifies the debt collector in
> writing within the thirty-day period that the debt,
> or any portion thereof, is disputed, the debt
> collector will obtain verification of the debt or
> a copy of a judgment against the consumer and a
> copy of such verification or judgment will be
> mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(a)(4). In compliance with this mandate,

Defendants' letter stated

> [i]f you notify MCM, in writing, within thirty (30)
> days after receiving this notice that the debt, or
> any portion thereof, is disputed, MCM will obtain
> verification of the debt or a copy of a judgment
> (if there is a judgment) and MCM will mail you a
> copy of such verification or judgment.

(Defs.' Ex. F.) The third and final statement the F.D.C.P.A.

requires a debt collector to include, particularly in

circumstances like here where the debt collector is not the

original creditor, is that

> upon the consumer's written request within the
> thirty-day period, the debt collector will provide
> the consumer with the name and address of the
> original creditor, if different from the current
> creditor.

15 U.S.C. § 1692g(a)(5). Defendants dutifully included this

statement as well. They explained to Plaintiff that

> [i]f you request, in writing, within thirty (30)
> days after receiving this notice, MCM will provide

you with the name and address of the original
creditor.

(Defs.' Ex. F.) The language in the letter is nearly identical
to the language in the statute. Thus, there is no question
that Defendants provided Plaintiff a proper validation notice.
Defendants are therefore entitled to judgment as a matter of
law on Plaintiff's F.D.C.P.A. claim to the extent it is based
on the allegation that Defendants violated § 1692g(a) by
failing to provide the required validation notice or
disclosures to Plaintiff. See Bleich v. Revenue Maximumization
Grp., Inc., 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002)("Where a
debt collector has included appropriate language regarding the
F.D.C.P.A. debt validation procedure, the allegation that the
debt is invalid, standing alone, cannot form the basis of a
lawsuit alleging fraudulent or deceptive practices in
connection with the collection of a debt.").

      (c) T-Mobile Account: Oral v. Written Dispute

On or about December 28, 2011, Plaintiff orally disputed
the T-Mobile account during a telephone conversation with
Defendants. Defendants continued their debt collection
activities after that phone call. On July 26, 2012, Plaintiff
mailed Defendants a letter disputing the debt. If a consumer
notifies a debt collector in writing within the thirty-day
period described in 15 U.S.C. § 1692g(a) that the debt, or any
portion thereof, is disputed, the debt collector shall cease

12

collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt. 15 U.S.C. § 1692g(b). Here, Plaintiff orally disputed the T-Mobile account on December 28, 2011, but she did not dispute the debt in writing until July 26, 2012. Plaintiff's oral notice of dispute did not trigger a statutory obligation for Defendants to cease their collection efforts. See Osborn v. Ekpsz, LLC, 821 F. Supp. 2d 859, 869-70 (S.D. Tex. 2011)("[I]f the consumer disputes the debt orally rather than in writing, the consumer loses the protections afforded by § 1692g(b); the debt collector is under no obligation to cease all collection efforts and obtain verification of the debt."); see also Withers v. Eveland, 988 F. Supp. 2d 942, 947 (E.D. Va. 1997)("Pursuant to § 1692g, however, if a consumer contests a debt by telephone rather than in writing, the consumer will inadvertently lose the protections for debtors set forth in the F.D.C.P.A.; the debt collection agency would be under no obligation to verify the debt and cease all collection efforts as required by § 1692g(b)."). Defendants are therefore entitled to summary judgment on Plaintiff's F.D.C.P.A. claim to the extent it is based on Defendants' failure to cease collection activities prior to Plaintiff's submission of a written dispute of the T-Mobile account.

(d) T-Mobile Account: Collection Efforts

Plaintiff alleges that Defendants' collection activities included calling her home telephone five times over a period of four months after Plaintiff verbally disputed the T-Mobile account and that such conduct is harassment under 15 U.S.C. § 1692d(5). Defendants respond that Plaintiff fails to raise a triable issue of fact as to whether Defendants' collection calls violated § 1692d(5) because Plaintiff's verbal dispute of the debt did not require Defendants to cease collection activities and because Plaintiff presents no other evidence of harassment.

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d(5). Prohibited conduct includes causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. § 1692d(5). A debt collector's intent to annoy, abuse, or harass a consumer may be inferred by examining the nature and frequency of debt collection calls. Meadows v. Franklin Collection Serv., 414 Fed. Appx. 230, 233 (11th Cir. 2011)(holding that question of material fact existed whether

14

debt collector's 300 phone calls to consumer amounted to harassment).

Plaintiff insists that Defendants' five phone calls over the course of several months amounted to harassment principally because these calls occurred after Plaintiff verbally disputed the T-Mobile account. As discussed supra, Defendants were under no legal obligation to cease collection activities based on Plaintiff's verbal dispute. Plaintiff presents no other evidence of harassment. On facts more egregious and more indicative of harassment, oppression, or abuse, summary judgment is routinely granted in favor of the debt collector. See, e.g., Valle v. National Recovery Agency, 2012 WL 1831156, *2 (M.D. Fla. May 18, 2012)(granting summary judgment for defendant debt collector on consumer's complaint under 15 U.S.C. §§ 1692d & 1692d(5) where defendant called plaintiff eighty-two times at work and at home over eight month period at a rate of approximately one call every three days and occasionally twice in one day, but without any other evidence of potentially harassing conduct); Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010)(granting summary judgment although the debt collector called fifty-seven times, often calling seven times per day, and leaving six identical voice messages); Waite v. Fin. Recovery Servs., Inc., 2010 WL 5209350, *3 (M.D. Fla. Dec. 16,

15

2010)(granting summary judgment although the debt collector during nine months called 132 times, often calling four times per day); Druschel v. CCB Credit Servs., Inc., 2011 WL 2681953, *1 (M.D. Fla. July 11, 2011)(granting summary judgment for debt collector although where debt collector called the debtor fourteen times during two weeks); Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 1229 (D. Kan. 2011)(granting summary judgment although the debt collector called the debtor 149 times during two months); Pugliese v. Prof. Recovery Serv., Inc., 2010 WL 2632562, *9-10 (E.D. Mich. June 29, 2010)(granting summary judgment although the debt collector called 350 times during an eight month period). Absent evidence of annoying, abusive, or harassing conduct, the pattern and frequency of Defendants' calls to Plaintiff create no triable issue of fact under § 1692d(5).

(e) T-Mobile Account: False Reporting to CRAs

Plaintiff insists that Defendants' decision to report the T-Mobile account to the CRAs violated 15 U.S.C. § 1692e, which prohibits debt collectors from making false representations, because Plaintiff had informed Defendants that the T-Mobile account was invalid. Defendants argue that they met their statutory obligation by flagging the T-Mobile debt as "disputed" in their reports to the CRAs.

Debt collectors may not falsely represent the character, amount or legal status of any debt, nor may they communicate to any person credit information which is known or which should be known to be false, including the "failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(2)&(8); Carey v. Pinnacle Credit Serv., LLC, 2014 WL 54115, *1 (M.D. Fla. Jan. 7, 2014)(holding that F.D.C.P.A. does not prohibit reporting disputed debt to credit agencies, but a debt collector's failure to communicate that a disputed debt is disputed is indeed a violation of the statute); Acosta v. Campbell, 2006 WL 146208, *13 (M.D. Fla. Jan. 18, 2006)("Section 1692e(8) prohibits communications to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed.").

In this case, Defendants specifically flagged the T-Mobile account as disputed when Defendants reported that debt to the CRAs. The F.D.C.P.A. does not require debt collectors to cease reporting a debt to the CRAs simply because a consumer disputes that the debt was ever owed. See Poulin v. The Thomas Agency, 760 F. Supp. 2d 151, 159-60 (D. Me. 2011)(debt collector's report of disputed debt to credit reporting agencies did not violate § 1692e(8) even though consumer explicitly told debt collector that there was no

17

legal basis for debt, where collector had properly verified debt with creditor, and appropriately marked debt as disputed). Defendants are entitled to summary judgment as a matter of law on Plaintiff's claim that Defendants violated § 1692e by reporting the disputed T-Mobile account to CRAs.

2. F.C.R.A. Claims

(a) Permissible Purpose for Obtaining a Credit Report

Plaintiff contends that Defendants obtained her consumer credit report without a permissible purpose, a violation of the F.C.R.A. Defendants argue that they obtained Plaintiff's credit report in connection with their attempted collection of the GE/Meijer and T-Mobile accounts, which is a permissible purpose under the F.C.R.A.

Section 1681b(3)(A) of the F.C.R.A. permits a debt collector to request a credit report if it uses the report to review an account. 15 U.S.C. § 1681b(3)(A); see Flores v. I.C. Sys., Inc., 2014 WL 1379046, *3 (S.D. Fla. Apr. 8, 2014)(F.C.R.A. allows a consumer's credit report to be provided to a person in connection with the review or collection of a consumer's account).

In this case, Defendants contend that they obtained Plaintiff's credit report to review Plaintiff's disputed debts. Defendants' debt collection letter to Plaintiff expressly states that any information obtained by Defendants

18

will be used for debt collection purposes. Plaintiff insists that Defendants had no permissible purpose to request her credit report, but offers no evidence that Defendants obtained her credit reports for any purpose other than collection. Therefore, to the extent that Plaintiff's F.C.R.A. claims are based on her allegations that Defendants obtained her credit report for an impermissible purpose, Defendants are entitled to summary judgment.

(b) False or Inaccurate Reporting

Plaintiff alleges that Defendants willfully and knowingly reported information to CRAs which Defendants knew was false and inaccurate. Defendants correctly observe that the F.C.R.A. does not provide a private right of action for inaccurate reporting.

The F.C.R.A. governs claims by consumers, like Plaintiff, against furnishers of information, like Defendants, based on an allegation that the furnishers submitted incorrect information regarding the consumer to CRAs. Green v. RBS Nat'l Bank, 288 F. Appx. 641, 642 (11th Cir. 2008); see generally 15 U.S.C. §§ 1681a(c) & (f), 1681s-2(a). Section 1681s-2(a) of the F.C.R.A. requires furnishers to submit accurate information to CRAs. Green, 288 F. Appx. at 642. Plaintiff contends that Defendants violated this provision by tendering false information regarding her accounts. "The F.C.R.A.,

19

however, does not provide a private right of action to redress such a violation . . . ." Id. (affirming district court grant of summary judgment in favor of debt collector where consumer contended that debt collector had violated the § 1681s-2(a) duty to provide accurate information to CRAs). Therefore, summary judgment is proper for Defendants on Plaintiff's F.C.R.A. claim to the extent it is based on an alleged violation of Defendants' duty under § 1681s-2(a).

(c) Reasonable Investigation of a Disputed Debt

Plaintiff alleges that Defendants willfully violated the F.C.R.A. requirement that furnishers of information perform a reasonable investigation after receiving notice from a CRA that an account is disputed. Section 1681s-2(b) generally requires credit information furnishers to conduct a reasonable investigation upon receiving notice of a dispute. Howard v. Pinnacle Credit Servs., LLC, 2010 WL 2600753, *3 (M.D. Ga. 2010)("Absent allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more than verify that the reported information is consistent with the information in its own records."). The plaintiff has the burden of showing that the investigation was unreasonable. Ware v. Bank of America Corp., 9 F. Supp. 3d 1329, 1339 (N.D. Ga. 2014).

In July and August 2012, Defendants received notice from two CRAs, Equifax and Experian, that Plaintiff disputed that the T-Mobile account was hers. Defendants confirmed that the information they were reporting to the CRAs was the same information that they had received from the original creditors. Plaintiff takes issue with the fact that Defendants examined only their internal records and contends that it was unreasonable for Defendants to rely on the information they received from the original creditors. The Court notes that Defendants did more than merely rely on their internal records - they requested information and assistance from Plaintiff, but Plaintiff did not respond. In the absence of Plaintiff's cooperation, the Court finds that it was reasonable for Defendants to limit the scope of their investigation to an examination of its own electronic systems. See id. (finding that consumer failed to raise a genuine issue of material fact that credit card issuer's investigation was unreasonable under F.C.R.A. where the issuer reviewed its internal records to ensure that the person who submitted the dispute and the owner of the account had the same name, date of birth, social security number, and home address).

### III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (doc. no. 85) is hereby **GRANTED** and

21

Plaintiff's "Motion to Supplement Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment" (doc. no. 103) is **GRANTED**. The Clerk is directed to enter **FINAL JUDGMENT** in favor of Defendants, terminate all deadlines and motions, and **CLOSE** the case. Costs are taxed in favor of Defendants and against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE